**MUDRICH, Plaintiff-Appellee, v. STANDARD OIL CO., et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21114.  Decided March 14, 1949

Harrison, Thomas, Spangenberg & Hull, Cleveland, for plaintiff-appellee.

McAfee, Grossman, Taplin, Hanning, Newcomber & Hazlett, Cleveland, for defendants-appellants.

(DOYLE, J., of the Ninth Appellate District, sitting by designation in place of MORGAN, J.)

**OPINION**

By DOYLE, J.

Appeal from a judgment of the Common Pleas Court of Cuyahoga County, in favor of plaintiff, entered upon a verdict of a jury in the amount of $25,000 and against The Standard Oil Company, the defendant.

The plaintiff is a minor who, through his next friend, sought and received a judgment for damages against the defendant which he claims arose as the proximate result of the negligence of the defendant's servant.

There is evidence tending to prove that the defendant, The Standard Oil Company, pursuant to an order from the proprietor of a general store and gasoline filling station, delivered by tank wagon truck gasoline to fill two underground tanks which served the pumps of the station. In the process of filling, one of the tanks overflowed, and, before the servant of the defendant could stop the flow, a quantity of the gasoline drained away over the hard frozen ground and eventually collected in several pools, the one farthest away being at the base of a tree near the building about 15 feet from the source of the overflow and spillage. Thereupon, the servant of the defendant entered the store to prepare an invoice and collect for his delivery. Upon the completion of this transaction, he informed, and pointed out to the person in charge, one Richard Solka (aged 16 and son of the owner), of the accident of spilling and stated that it would soon evaporate. Richard Solka gave no directions nor made any request to the defendant's servant in connection with the accidental spillage nor did either one do anything about it.

Sometime later, the plaintiff, Theodore Mudrich, aged seven years and eight months and Jimmie Solka, the seven year old son of the owner of the business, came to the store and station from school and commenced to play in and about the premises. After playing at marbles for awhile, they then helped George Solka, an eleven year old son of the owner, pile beverage cases at the side of the store. Tiring of this work after a short time, they again commenced to play. During this period of play the seven year old Jimmie Solka entered the store and secured matches. He then lighted the two pools of gasoline which remained from the spillage of several hours before. The plaintiff testified:

"Q. Did he light both puddles with matches?
A. Yes.
Q. Then what happened after that?

A. Well I went and got some mud and put out the first puddle. Then Junior was looking for something to put out the big puddle. While he was looking for that I went to jump in to put it out."

There is evidence to indicate that the eleven year old George Solka and the seven year old plaintiff, Mudrich, put out the smaller of the two fires with mud and slag. After this was accomplished, George Solka then started to secure cardboard with which to smother out the larger fire near the base of the tree. At this time, the plaintiff decided to put it out by jumping on it. He thereupon jumped into the fire with both feet. The splashing of the unconsumed gasoline and the flames fired his clothes, resulting in serious and severe burns with an accompanying permanent injury.

The issues presented by the appellant in this appeal, which seeks a reversal of the judgment of the Court of Common Pleas and a final judgment in favor of the said appellant, are in substance as follows:

"1. That the Standard Oil Company, as a business visitor, owed to the plaintiff only the duty owed by the land occupier, George Solka, Sr., and that George Solka, Sr., owed no duty to the plaintiff with respect to the open and visible puddle of gasoline.

2. Even if the defendant owed to the plaintiff a duty different from that owed to the plaintiff by the land occupier, the defendant contends that the spillage of gasoline was not, as a matter of law, the proximate cause of the plaintiff's injury.

3. The plaintiff assumed the risk involved in his actions when he deliberately jumped into an open fire with both feet."

1. Is it the law of this state that the owner or lessee of premises upon which he conducts a business, benefits from a rule that restricts his duty toward gratuitous licensees to abstention only from wilful or wanton injury and warnings of hidden perils?

The affirmative of this question is the premise upon which the appellant claims that it owed no duty to the injured person for the reason that it was entitled to the same immunities from liability to the plaintiff as the occupier and user of the land.

There are many theories adopted by the courts of other states on this question and the courts of Ohio have not been particularly helpful in clearing the confusion.

It is true as claimed by the appellant that in this state the following is a correct statement of the law:

"4. A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers, pitfalls or obstructions.

5. The foregoing rule is not altered by the fact that the injured person is a child of tender years."

Syl. 4 & 5: **Hannan, Adm. v. Ehrlich, 102 Oh St 176.**
See also—
**Wheeling & Lake Erie Ry. v. Harvey, 77 Oh St 235; Soles, Adm. v. Ohio Edison Co., 144 Oh St 373.**
The rule above stated, however, must be read in the light of the facts of that case. There, a statical condition existed and the rule was pronounced to apply to such a condition. The comment of the Chief Justice in his opinion indicates however, that the rule is not an inflexible one for he comments at page 1878:

"A well-defined distinction runs through the cases, between injuries caused by a dangerous statical condition and premises where dangerous active operations are being carried on. A much higher degree of care is necessary in protecting children in the latter case than in the former. If the statical condition of the premises is such that the dangers are easily perceived, no liability can arise; but if the statical condition is made perilous by the active and negligent operation thereof by the owner, a different situation is presented."

The court of last resort in this state has not disavowed the principles pronounced in a number of their older cases. For instance, Judge Shauck, in **The Cincinnati, Hamilton & Dayton Ry. Co. v. Aller, 64 Oh St 183 at page 193,** distinguishes the case then under consideration from the case of **Harriman v. Railway Co., 45 Oh St 11.** He said:

"While in Harriman v. Railway Co., the recovery was by one who was upon the grounds of the company by permission only, the injury was not occasioned by any real or alleged defect in the construction of the road. The injury there resulted from the operation of the road. The doctrine of the case is that when the company became aware that persons were using the road for purposes of their own it became its duty, not to alter the construction of its road, but to operate

it consistently with the facts thus known to it. It was held to be a violation of that duty to add new and further peril to such permitted use without taking precaution against injuries which would naturally result therefrom. Not only does such added peril from the operation of the road appear as a fact in the case, but in the syllabus it is stated as a ground of recovery; and in the opinion the question for decision is stated as follows:

'An owner may, without protest or objection, permit his premises to be used by the public so long, in the same condition, that his acquiescence in the continuation of such use, until some warning or notice on his part, might reasonably be expected; and **if under such circumstances and with knowledge of the same, he should place or leave some new, dangerous structure or instrument in the way so used, and from which he might reasonably apprehend danger of injury to those accustomed to such use, can he claim exoneration from liability in case such injury shall occur,** on the ground that the law imposed no duty on him to keep his premises in a safe and suitable condition for trespassers and licensees who enter by permission only?' " (Emphasis ours.)

The answer to this question was no.

Again, there may be found in **Ziehm v. Vale, 98 Oh St 306 at page 313,** the following language:

"The distinction between the legal duty due uninvited persons, in cases arising from the construction of the premises and in those arising from their negligent operation, is clearly made and discussed in **C. H. & D. Rd. Co. v. Aller, 64 Oh St, 183.** An page 193, Shauck, J., in discussing the case of **Harriman v. Railway Co., 45 Oh St, 11,** said of that case: 'The injury was not occasioned by any real or alleged defect in the construction of the road. The injury there resulted from the operation of the road.' "

This court is of the opinion that if the licensor proprietor negligently spilled gasoline and permitted it to remain in open pools on the premises and as a proximate result thereof a social visitor was injured, the social visitor (a gratuitous licensee) being rightfully there may maintain an action. Even if such visitor was there under a permission which at any time could be revoked, and under circumstances which did not make them responsible for any defect in the existing condition of the premises, the proprietor could still be held liable for any negligent act of himself or his servant which

made the premises dangerous and which in fact injured the social visitor.

Now it is urged as heretofore stated that the business visitor is entitled to the same immunities as the proprietor. It may be that in a proper case we would so decide. However, if active negligent acts of the proprietor of premises could render him liable to an infant gratuitous licensee on the premises, certainly active negligent conduct of the business visitor which caused the proprietor's premises to become unsafe and perilous to an infant social visitor could likewise make him liable.

2. It is further claimed by the appellant that "even if the defendant had some duty to the plaintiff, the defendant's act was not the proximate cause of the injury. * * * The act of Jimmie Solka in lighting the fire was a supervening, independent act which proximately caused the plaintiff's injury, and plaintiff's voluntary act in jumping into the fire was a contributing cause of the injury. Both these acts were unusual and unforeseeable circumstances."

It is usually true that, when a third party enters the picture of a tort action, the situation is made more complex than if the injury is the result of only one person's conduct. The basis of tort liability, however, never changes. It has four distinct steps:

1. Did the defendant owe the plaintiff a duty against the risk in question? (against the danger of third persons throwing matches in pools of gasoline and the innocent attempt of a child to put out the ensuing fire).

2. Did the defendant violate that duty? (Was it negligent?)

3. Was the plaintiff hurt?

4. Was there a causal connection between defendant's violation of duty and plaintiff's hurt?

Now, under the facts of the case under consideration, the mere spilling of the gasoline caused no harm in and of itself. But the negligence, if any, was the failure to protect against the very danger that the plaintiff suffered—i. e., the danger of someone accidentally or intentionally igniting the gasoline, and the danger of an infant rightfully in and about the premises, receiving injuries in an attempt to put it out.

Once that duty is recognized and determined to have been violated, there cannot be much doubt about the relation of cause and effect between the defendant's negligence and the plaintiff's hurt. Independent agencies, when combined with defendant's conduct, only save a defendant from liability when they introduce a risk not within the scope of the de-

fendant's duty. They seldom play a part in the matter of causal relation between his conduct and plaintiff's hurt, except to concur with his conduct. They do not break a chain of causation.

The jury in the instant case found by its verdict that a duty was owned by the defendant company to this plaintiff; that what happened to the child was something which was within the range of probability and should have been anticipated by the mind of a reasonably prudent and careful person. In other words, the jury found that the negligence of the defendant was the proximate cause of the plaintiff's injury. Under the law as we understand it in this state, we cannot say that such finding was manifestly against the weight of the evidence nor contrary to law.

We do not think it necessary to further labor the question of proximate cause. It has been under consideration in many Ohio cases in which claims were made that the chain of causation was broken by the independent acts of third persons. Judge Bevis cites quite a number in **Gedeon v. East Ohio Gas Co., 128 Oh St 335.** Reference is made to that case and the cases and texts which the learned Judge cites to support his conclusions.

3. A further claim is made that "the plaintiff assumed the risk involved in his actions when he deliberately jumped into an open fire with both feet."

Contributory negligence and assumption of risk were pleaded as defense by the defendant in addition to a general denial. The Court charged the jury fully on contributory negligence as applicable to a minor, both before the argument of counsel at the request of the defendant and in the general charge prior to submission of the case to the jury. It is now claimed that the court committed error prejudicial to the rights of the defendant in refusing to give the jury before argument of counsel the following instruction on assumption of risk.

"If you find from the evidence that the plaintiff, Theodore Mudrich, saw the fire which Jimmie Solka ignited, then you may consider whether Theodore Mudrich assumed the risk incident to stepping upon said fire. By assumption of risk is meant that one who exposes himself voluntarily to an open and visible danger or peril is responsible for his own conduct and cannot recover whether or not the defendant was guilty of negligence. In determining whether Theodore Mudrich assumed the risk of the fire ignited by Jimmie Solka in this case, you must consider whether a boy of Theodore Mudrich's

age and experience would or would not have assumed the risk."

We recognize as a rule of law that, independently of the relation of master and servant, there may be, under certain circumstances, a voluntary assumption of risk of a known danger which will preclude an injured person from recovery. This rule rests on the general principle expressed in the maxim, **volenti non fit injuria.** However, before the principle may be applied to a given set of facts there must be evidence from which reasonable persons could reach different conclusions; first, that the injured person accepted a danger which was clearly understood and, second, that he had a foresight of the consequences and a readiness to accept them.

Cordoza, Ch. J. in Zurich G A & L Ins. Co. v. Childs Co., 253 N. Y. 324, 327; 171 N. E. 391.

See also Bohlen, Studies in the Law of Torts, 516 et seq.

The members of this court are of the opinion and so decide that reasonable minds could come to no other conclusions, than that when the 7½ year old child jumped into the fire for the purpose of extinguishing it he did not accept a danger which he clearly understood and that he did not have a foresight of the consequences of his act and a readiness to accept them.

It is further observed that if it be assumed that the rule of assumption of risk is properly in the case, the requested charge should not have been given. It failed to state the premises upon which the rule is predicated. Under the rule a plaintiff must voluntarily, consciously and deliberately elect to encounter a known risk. No risk can be said to be assumed until the plaintiff has knowledge of the danger, a foresight of the consequences, and a readiness to accept them.

We therefore hold, for the reason above stated, that a charge to the jury on assumption of risk would have been improper. We do not question the duty of the court to submit to the jury as it did, the question of contributory negligence.

Examination has been made of all of the errors claimed and we find none of a prejudicial character.

In our examination of the authorities treating the various questions involved, we encounter Rossiaki v. West Side Motors Inc., decided by the Court of Appeals of the Second District and noted in **19 Abs 191.** We determine that the judgment to be entered in the case under consideration is in conflict with the judgment of the Second District Court of Appeals in the case above noted. We therefore certify this case to the Supreme Court of Ohio for review and final determination

under authority of **Art. IV, Section VI of the Constitution of Ohio.**

Judgment affirmed. Exc. Order See Journal.

SKEEL, PJ, (acting) HURD, J, concur.