## CHARLES GRANT v. GRAHAM CHERO-COLA BOTTLING COMPANY.

(Filed 23 October, 1918.)

**Vendor and Purchaser—Explosives—Soft Drinks—Bottling Under Pressure —Duty of Vendor—Burden of Proof—Reasonable Care—Instructions— Appeal and Error.**

> In an action by the purchaser to recover damages from the manufacturer of ginger ale in glass bottles filled under high gas pressure, it is *Held* that the manufacturer owes the dealer and his purchaser the duty to use reasonable precaution to see that the bottles may be safely handled in the ordinary manner, which is for the defendant to show; and a charge by. the court that restricted its liability to the methods, etc., used by other like manufacturers, whose bottles had been shown to frequently explode, does not meet the requirement, and is reversible.

APPEAL by plaintiff from *Bond, J.,* at May Term, 1918, of ALAMANCE.

This was an action for damages sustained from an injury causing the loss of an eye. The plaintiff alleged that the defendant sold him bottles containing ginger ale, "which, on account of the excessive pressure of gas or by reason of some defect in the bottle, were dangerous, as aforesaid, and likely to explode and to cause injury to any person handling them or being near them."

The defendant's answer denied all negligence, and averred that in bottling the beverage sold to the plaintiff it had used high-class, standard materials and bottles; that it had a standard, up-to-date plant, equipped with modern machinery, and that it used tests and checks, to the end that excessive pressure should not be used. It pleaded contributory negligence on the part of plaintiff, in that plaintiff negligently submitted the bottled beverage to sudden and violent changes of temperature, which caused and was likely to cause the explosion of any bottle containing the carbonated beverage. The evidence was that the plaintiff was a merchant, and, having purchased a number of bottles of ginger ale from the defendant at its factory in Graham, N. C., had placed the same in

the refrigerator in his store. Shortly thereafter, going to the refrigerator to get a bottle for a customer, upon lifting the top and without touching any of the bottles, one of them burst, one of the pieces striking the plaintiff's left eye, destroying the same. There was evidence that defendant put up this and another carbonated beverage in his factory, and both prior and subsequent to the plaintiff's injury, bottles had burst, injuring numerous other persons under similar circumstances.

There was also evidence that these facts were known to the defendant, who also knew the manner in which the plaintiff used these bottles in his business, which was the usual and customary way in which merchants purchasing such merchandise used and handled it. The plaintiff complained that the defendant was negligent in bottling the beverage in such a manner; that it was dangerous to handle, and defendant had failed in his duty to plaintiff in selling him bottles which, on account of the excessive pressure of gas, or by reason of some defects of the bottles, were dangerous to be near or to handle.

The plaintiff introduced four or five witnesses, who testified to numerous explosions of both of the carbonated beverages bottled by the defendant at its plant. Some of these explosions were shown to have occurred in the bottling; others while the bottles were being crated and loaded; also upon the road, while being hauled for delivery, and also in the hands of customers besides the plaintiff, after delivery.

These explosions were not denied by the defendant, whose evidence showed explosions of these bottles put up by it, and also of other carbonated beverages put up by other plants. The defendant put on evidence that its plant at Graham was modern, up-to-date, and equipped with good machinery, and that it caused all bottles used in its business to be thoroughly and closely inspected.

The plaintiff excepted to the admission and rejection of testimony, the refusal of the judge to give certain prayers for instruction, and to certain paragraphs in the charge.

The jury having returned a verdict in favor of the defendant, the plaintiff appealed.

*William P. Bynum, R. C. Strudwick, J. J. Henderson, and Thomas C. Carter for plaintiff.*
*Long & Long and Parker & Long for defendant.*

CLARK, C. J. We need not consider more than one exception, since that goes to the whole trial, and, if erroneous, requires that the matter shall be again submitted to the jury under proper instructions. The court instructed the jury that if they found that "The defendant company used in its business appliances in approved and general use, with

competent and sufficient workmen, and put in such drink only that quantity of gas pressure generally and at all times put in similar drinks by reasonably prudent and careful bottlers putting up such drinks, and also used that degree of care in selecting and inspecting the bottles in question and in having them filled and closed that would have been used by a man of reasonable care and prudence, and in putting up such drink from start to finish, used that degree of care and prudence that would have been used by a man of reasonable care and prudence in handling and preparing the said article, then the defendant would not be guilty of negligence. ) If the injury was caused under the circumstances referred to above, after the defendant had used that degree of prudence and care, then the injury to plaintiff would have resulted from an accident and would not have been caused by the negligence of the defendant company, and in that event the jury should answer the first issue 'No.' "

This seems to have been the theory upon which the case was tried, and, with some changes of verbiage, is the subject of other exceptions. The change is so slight that it is not necessary to repeat the other charges excepted to.

All these charges embody the same idea, that the defendant is excused if it conducted its business in the same manner that other bottlers conducted theirs, although as a matter of fact all might be dangerous. They entirely fail to furnish any standard of the measure of duty required of a reasonable and prudent man under circumstances such as these. The practice of other bottlers is referred to as such standard, but those other bottlers were, on the evidence, careless and negligent as well as the defendant, as shown by the numerous explosions of their goods.

The plaintiff's counsel contend that the defendant's duty to the plaintiff and to the public cannot be measured by any such consideration; that the defendant owed to him the duty not to put into his hands as its customer a bottle charged with gas to that extent that it was dangerous to handle in the usual and customary method. The point is well taken.

There is no evidence of what a prudent and reasonable man would do in bottling such explosive material. The evidence that other plants put up bottles of such beverages which frequently exploded in like manner during the bottling, during transportation, and in the hands of customers, was not evidence that they were reasonable and prudent men, but, on the contrary, that they were as careless and negligent in their duty to the public and to their customers as this defendant. It does not exonerate this defendant that other establishments were careless and negligent. It is very certain that these establishments are not discharging their duty to the public and to their customers in putting out goods so prepared and bottled that there are numerous explosions, liable to cause injury at any time, and which not infrequently have done so, as in *Dail*

*v. Taylor,* 151 N. C., 287, and *Cashwell v. Bottling Works,* 174 N. C., 324.

If the charge of the court were correct, it would license the defendant and other dealers in these highly charge carbonated drinks to place upon the market highly dangerous merchandise, liable to explode and cause injury, such as the loss of plaintiff's eye, to all who handle these goods in the ordinary course of business, without any liability on the part of the manufacturers. The manufacturer is liable even to the final purchaser, though there was no contractual dealings between them. *Waters-Pierce Company v. De Selms,* 212 U. S., 159, 178, 179; *Wellington v. Downer Co.,* 104 Mass., 64; *Wiser v. Holzman,* 33 Wash, 87.

It is not incumbent upon the plaintiff to show what precautions the defendant should take; that duty devolved upon the defendant, who was liable for negligence in putting such dangerous goods upon the market without sufficient precaution to make them safe.

It may be that the defendant could have used wicker covering for the bottles, such as is used for champagne bottles, or wire-mesh cases, as is used for certain goods of explosive nature. These would not prevent explosions, but would prevent the fragments of the glass doing much damage; or the goods might be packed in sawdust, as is done with some goods, such as aerated water liable to explosion; or there might be some harmless ingredient put in the decoction to prevent sudden expansion, causing explosions—a device that is not unusual; or thicker bottles might be used, or there may be still other devices in this age, in which "men have sought out many inventions." Ecclesiastes, ch. vii, v. 28.

But what is the best protection is one which the defendant must ascertain and use. It is certainly no defense for the defendant, who has placed dangerous and highly explosive merchandise upon the market, which it knows has often exploded, to the injury of its customers and others, to claim that other vendors and manufacturers in their pursuit of gain have been as indifferent to the safety of their customers and the public as the defendant itself.

His Honor seems to have applied to this case the rule applicable to master and servant, where the servant sues for the master's negligence in failing to furnish a safe place to work and safe appliances, as in *Hicks v. Mfg. Co.,* 138 N. C., 319. But that is not the maximum. It is only the minimum requirement, even, in such cases. The master is liable if he does not use such improved appliances as are in general use. But the master would not be held protected if there are appliances which it can ascertain and use, and which would be a protection, simply because other employers have also been negligent. This defense was set up by the railroad companies in *Greenlee v. R. R.,* 122 N. C., 977; *Troxler v. R. R.,* 124 N. C., 191; and also by defendant in *Lloyd v. Hanes,* 126

N. C., 362, and in the cited cases to the above in the Anno. Ed., and clearly repudiated.

Such rule, if adopted, would discourage all improvements and appliances for the protection of life and limb. It would bring to a standstill all efforts for the better protection of mankind from preventable danger. The rule laid down in *Witsell v. R. R.,* 120 N. C., 563, quoted from Alexander Pope, while it does not require that any one should be "The first by whom the new is tried," certainly makes him liable if he is among "The last to lay the old aside."

As a matter of sound public policy and humanity, as well as of justice, the proposition that a negligent manufacturer putting goods on the market is not liable for failure to use safety preparations and appliances to guard against dangers that are known to him, simply because other manufacturers are no more careful than he, and are as reckless and regardless of the safety and of the rights of their customers, cannot be sustained.

"Safety first" for the public. If these goods are so inherently dangerous from their frequent explosion and liability to cause damage, as by putting out the eye of the plaintiff, that they cannot be made safe, then placing them upon the market is indictable, as well as makes the manufacturer and all vendors liable to actions for any damage accruing. *Ward v. Seafood Co.,* 171 N. C., 33.

Error.