CAMPBELL, APPELLEE, *v.* HUGHES PROVISION CO.,
APPELLANT.

(No. 3973—Decided April 20, 1949.)

*Mr. Raymond J. Finley,* for appellee.

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellant.

DOYLE, J.   Appeal by the defendant from a judgment of the Court of Common Pleas of Summit County, in favor of the plaintiff, entered upon the verdict of a jury in the amount of $8,000, and against the Hughes Provision Company, the defendant.

Mrs. Margaret Campbell sought and received a judgment for damages arising out of personal injuries against the defendant company, which she claims arose as the proximate result of the negligence of the defendant company.

There is evidence tending to establish the following facts:

The defendant operates a retail store on South Main street in the city of Akron and sells provisions to the general public.  Entrance to and from the store is gained through two swinging doors.  The north door is hinged on its north side, and, when closed, extends in a northerly and southerly direction parallel with the street; when opened from the front, it swings inside clockwise in an arc of 90°, and, when swung outside, it swings counterclockwise in an arc of 90°.  The south door is hinged on its south side, and swings as does the north door, except in an opposite direction.  When the doors are closed, the southerly edge of the north door and the northerly edge of the south door meet in the center of the door opening.  Each door is about three feet wide and consists in most part of a large pane of glass, surrounded by a wooden border of about six inches, the glass extending from the top to about twenty-four to thirty inches from the bottom.

Mrs. Campbell, at the time of the accident, was a woman 78 years of age.  She entered the store,

accompanied by her husband, through the north door, bent on the purchase of bread. Immediately after passing through the doorway and while standing in the area of the inside arc of the swing of the north door, she was struck by the door when it was pushed in from the outside by another person about to enter the store. The impact with the door knocked her down, and serious injuries resulted.

The petition originally contained ten different specifications of negligence. The court finally submitted to the jury but two—the others having been either withdrawn or stricken following objections to their propriety. The two specifications of negligence submitted were:

"8. In that the defendant failed to warn its invitees and patrons, such as the plaintiff, of the conditions then and there existing as hereinabove set forth.

"9. In that the defendant failed to provide adequate clearance between the extremity of the arc of the door and the display cases of said store."

Appropriate to specification of negligence No. 9 above, there is evidence tending to prove that a bread counter extended in a generally easterly and westerly direction on the north side of the room, and that the distance between the easterly end of this counter and the east and west line of the north door when fully opened was between 16 and 18 inches. The testimony of the husband of the plaintiff describes the conduct of the couple and the conditions in the store as follows:

"Q. * * * why did you go into Wagner's?

"A. Well, she said she was going for a loaf of bread, and we went in there, and she went on the bread side and I stopped on the side of the lunch meat.

"* * *

"Q. Tell the jury which side the lunch meat is on, when you go in, and which side is the bread counter?

"A. The lunch meat is on the left side. The bread is on the right side of the entrance.

"Q. What did Mrs. Campbell do when she got in there? * * *

"A. She went to the bread counter.

"Q. All right. Now, tell the jury about how far was she, in feet, inside of the store, when you last saw her?

"A. Well, as near as I could guess, about three feet.

"Q. And you say you then turned to the left, or the lunch meat counter—is that right—after that?

"A. Yes.

"Q. What was the next thing that you heard or saw?

"A. The next thing, I just turned around in time to see her knocked on the floor.
"* * *

"Q. Tell the jury, Mr. Campbell, whether or not, on that day—were there other people waiting to be waited on at the counter—at the bread counter there that day?

"A. They were lined up on the front of that counter where the bread was, and she was on the outside of the row, a matter of about three feet."

A Mrs. Katherine Ross testified:

"Q. You say you were in the store at this particular time?

"A. Yes.

"Q. What, if anything, happened that you saw at that time of the day?

"A. Well, I was waiting to be waited on. There was quite a crowd in the store at the time, and I

was just standing around there waiting, and I saw this couple come in. The lady walked over to the bakery counter and her husband walked in the other direction. At that time the store was very crowded. She just stepped over to the bakery counter. Somebody came in the door and it swung around and knocked the old lady down. * * *

"Q. And where, exactly, as you remember it— whereabouts was Mrs. Campbell with reference to the door and the counter when she was struck by the door? Where was she standing?

"A. Well, she was just inside of the door. She had just stepped in and was waiting at the counter. " * * *

"Q. Does that door swing way back to the counter or close to the counter?

"A. Yes, it swings way out. " * * *

"Q. Now, tell the jury about how close Mrs. Campbell was to the counter when she was standing there?

"A. Well, I can't tell exactly * * * because there were a few people waiting there, and she had to stand back of them and wait for her turn."

The plaintiff herself testified:

"Q. You just tell me, in your own words, what happened there that day?

"A. Well, I went in the right-hand side and the bread counter you know is on the right-hand side when you come in the store, and I was there, I couldn't just exactly say how but I didn't seem to get clear in the door.

"Q. What happened to you?

"A. Well, I go to the floor.

"Q. What caused you to go to the floor?

"A. Well * * * I got knocked down. " * * *

"Q. Did you yourself pull or push the door to open it?

"A. I was on the inside of the door, just cleared the door a little bit as far as I can remember and there must have been someone that pushed the door and the door pushed me.

"* * * *

"Q. Do you remember of going through the door?

"A. I remember getting clear of the door just a little bit."

It would appear from the evidence that, when the plaintiff entered the store through the swinging door, the door swung back in place, and that, at the same time, she turned toward the bread counter and stood behind other customers in the space required for the inward swing of the door by other invitees of the defendant company. These are the controlling facts upon which we must determine the legality of the trial court's judgment for the plaintiff.

1. It is said in 38 American Jurisprudence, Negligence, Section 131:

"The proprietor of a store, shop, or other place of business kept open for public patronage is not under an insurer's liability as to the safety of persons who come thereon, but he does owe to customers who enter the premises, while the establishment is open for business, the duty of exercising ordinary care to keep the aisles, passageways, and such other parts of the premises as are ordinarily used by customers in transacting business in a reasonably safe condition for use by the persons thus entering, and to warn them of dangerous conditions upon the premises which are known, or which reasonably should be known, to him but not to them. This duty exists by reason of the fact that the customers enter the premises by the invitation, at least by the implied in-

vitation, of the proprietor.''

And to the same effect are: 29 Ohio Jurisprudence, Negligence, Section 61; *Cincinnati Base Ball Club Co.* v. *Eno,* 112 Ohio St., 175, 147 N. E., 86; *Lake Brady Co.* v. *Krutel, Admx.,* 123 Ohio St., 570, 176 N. E., 226; *Englehardt* v. *Phillips,* 136 Ohio St., 73, 73 N. E. (2d), 829.

It is argued by the appellant that ''before there can be a liability on the part of a storekeeper for the arrangement of its store, there must be competent evidence of the departure from some standard, and that it was not up to a jury, in the absence of such evidence, to fix the standard such as was done in the instant case. In the absence of proof as to a specific requirement or established custom or usage, it was not proper to leave to the jury the question as to whether the defendant's storeroom was in a reasonably safe condition. In the absence of evidence of established or comparative standards of care as to the equipment of a storeroom, it is not for the jury to say what those standards shall be.'' In support of this claim the following Ohio cases are cited: *Englehardt* v. *Phillips,* 136 Ohio St., 73, 73 N. E. (2d), 829; *Shoemaker* v. *Elec. Auto-Lite Co.,* 69 Ohio App., 169, 41 N. E. (2d), 433; *Jackson* v. *Cincinnati Gas & Elec. Co.,* 70 Ohio App., 139, 42 N. E. (2d), 218.

We do not agree that the conduct of others fixes a legal standard of care. The substantive law tells what the standard of conduct for negligence is. This standard is fixed and is independent of the actual conduct of others. It consists of a failure to exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances, in keeping the premises in a reasonably safe condition for the use of the persons invited to enter and transact business. Of course,

it is fundamental that before failure to use such care can be made the basis for recovery, it must appear that the complainant falls within the class of persons to whom the duty of care was owing, and that the conduct of the defendant was such that a reasonably prudent and careful person should have foreseen or anticipated from such conduct the probability of injury to persons in the plaintiff's general situation. *Gedeon* v. *East Ohio Gas Co.,* 128 Ohio St., 335, 190 N. E., 924; *Ford* v. *Wanamaker,* 224 N. Y., 655, 121 N. E., 868.

It is established, we think, that the conduct of others doing business under similar circumstances and conditions, or under "established customs or usages," may, under certain circumstances, be admissible in evidence as some evidence of the nature of the condition in question, because it indicates what is the influence of the thing or condition on the ordinary person in that situation. It must not, however, be taken as a legal standard for the conduct required by law. II Wigmore on Evidence (Third Ed.), Section 461.

Professor Wigmore, in the above-mentioned treatise, quotes (at top of p. 490) the language of Holmes, J., in *Texas & P. Rd. Co.* v. *Behymer,* 189 U. S., 468, 47 L. Ed., 905, 23 S. Ct., 622, which we believe is entirely applicable to this discussion. He said:

"What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

We indulge the presumption that the jury by its general verdict found that the defendant failed in its duty to exercise reasonable and ordinary care by failing to warn of the "conditions then and there existing" and in failing "to provide adequate clearance between the extremity of the arc of the door and the display cases of said store," and that what hap-

pened to the injured lady was something which was within the range of probability, should have been anticipated by the mind of a reasonably prudent and careful person, and had a causal connection with the tort. Under the law, as we understand it to be, we cannot say that such finding was manifestly against the weight of the evidence nor contrary to law. *Joseph v. Horn & Hardart Co.*, 285 N. Y., 845, 32 N. E. (2d), 831.

2. It is claimed that the court in its general charge "imposed a greater duty on the defendant than that prescribed by law," in that the jury was told "that the operators of stores owe a duty to patrons of the store to exercise ordinary care *to prevent accidents and injuries* to patrons while in the store and while the patrons are on the premises. But the operators of stores, such as the defendant, are not insurers against all accidents and all injuries to such patrons while in the store."

We find no error here. The charge is in almost the exact language of syllabus 1 of the case of *S. S. Kresge Co.* v. *Fader,* 116 Ohio St., 718, 158 N. E., 174, where it was said:

"1. Owners or lessees of stores owe a duty to the patrons of the store to exercise ordinary care to *prevent accident and injury to the patrons while in the store,* but they are not insurers against all accidents and injuries to such patrons while in the store." (Emphasis ours.)

3. On the question of contributory negligence and assumption of risk, the appellant urges:

"If * * * it can be said that there was evidence of ʻ * * violation of * * * duty imposed upon defendant * * *, then it is submitted that plaintiff herself was guilty of negligence and assumed the risk of injury, which bars her recovery herein as a matter of law."

Many cases are cited in the attempt to sustain this claim—all of them well known to the members of this court. Of especial interest is *Leighton* v. *Hower Corp.*, 149 Ohio St., 72, 77 N. E. (2d), 600, in which case the Supreme Court affirmed a judgment of this court (for the defendant) and in which case the same counsel were engaged. An analysis of those cases in the light of the facts of the case under consideration, while of academic interest, would require a discussion of such great length that its appropriateness to this decision would be of some doubt. It is, therefore, our purpose to discuss substantive legal principles, well grounded in this state, to the facts before us.

Negligence may be said to be the failure to do what a person of ordinary prudence would do under the circumstances of a particular case.

"While, primarily, neglect is an act of omission, it is clearly made to comprehend also acts of commission. It includes not only the omission to do something. which a reasonably prudent man guided by those impulses which regulate the conduct of human affairs would ordinarily do, but includes also the doing of things which such a man under similar circumstances would not do. It is very clear, therefore, that the legal duty * * * in any given case depends upon the surrounding facts and circumstances, and any legal controversy must leave to the jury a determination according to their own ideas of what a person of ordinary prudence would have done under those circumstances." *Payne, Dir. Genl.,* v. *Vance,* 103 Ohio St., 59, 67, 133 N. E., 85.

Can we say, as a matter of law, that reasonable minds can conclude only that the complainant, guided by those impulses which regulate the conduct of human affairs, omitted to do or did something which a reason-

ably prudent person would or would not have done under the same or similar circumstances?

As we follow her through the swinging door, we see her turning to a place in front of the bread counter and stopping immediately behind other persons waiting to be served. True, she was in a space within the arc of the inside swing of the door where she probably would not have stood had she thought out and calculated all of the consequences which might result, but can we say that this failure was negligence per se? We think not. We think a jury question was presented and that it was for the jury to determine whether she was negligent according to their ideas of what a person of ordinary prudence would have done under the same circumstances. For her, reasonable care required precautions commensurate with the dangers to be apprehended. As an invitee to the store to buy bread, she had the right to assume that the floor space within a reasonable distance from the front of the counter was reasonably safe for her to stand; and it seems reasonable to us that an invitee under these circumstances might mistake the limit of the swing of the door and the limited safe space in front of the counter provided by the defendant for the accommodation of its customers. She had no duty, under the circumstances of this case, to take extraordinary precautions against a danger of which she had not been warned.

Assuming, however, that the facts justify the conclusion that the plaintiff was negligent as a matter of law, do these same facts justify the conclusion that as a matter of law her negligence was a proximate cause of her injuries?

"It is a well-established rule that to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural

and probable consequence of the negligence * * *, and that it was such that might or ought to have been foreseen in the light of the attending circumstances. In contemplation of law, an injury that could not have been foreseen or reasonably anticipated as the probable result of an .act of negligence is not actionable." 29 Ohio Jurisprudence, 483, Negligence, Section 68.

As we see the case before us, we believe that the question of proximate cause in connection with the claim of contributory negligence was a jury question; that it was for the jury to say whether or not, under the surrounding circumstances, a reasonably prudent person should or would have foreseen or anticipated the consequences of standing where plaintiff in this case stood.

Directing attention now to the claimed "assumption of risk," the writer of this opinion examined this question in the case of *Mudrich* v. *Standard Oil Co., ante*, 8, 54 Ohio Law Abs., 1, 86 N. E. (2d), 324. It is there written:

"We recognize as a rule of law that, independently of the relation of master and servant, there may be, under certain circumstances, a voluntary assumption of risk of a known danger which will preclude an injured person from recovery. This rule rests on the general principle expressed in the maxim, *volenti non fit injuria*. However, before the principle may be applied to a given set of facts there must be evidence from which reasonable persons could reach different conclusions; first, that the injured person accepted a danger which was clearly understood and, second, that he had a foresight of the consequences and a readiness to accept them. Cardozo, Ch. J., in *Zurich G. A. & L. Ins. Co.* v. *Childs Co.*, 253 N. Y., 324, 327, 171

N. E., 391. See, also, Bohlen, Studies in the Law of Torts, 516 *et seq.*"

We are of the opinion that reasonable minds could conclude only that the plaintiff legally did not assume the risk in the case before us. Certainly, the rule is not applicable to cases where the negligence of a defendant, which the injured party could not or might not reasonably have foreseen or expected, was the proximate cause of the injury, even though the act of a third person was the direct cause of such injury.

4. The appellant further claims that "the court erred in the admission of evidence by plaintiff by permitting plaintiff to read to the jury all of plaintiff's deposition, taken as upon cross-examination by the defendant prior to trial, the plaintiff not being present for trial."

It appears that both sides examined the plaintiff at the time of the taking of her deposition. The said deposition was duly taken and filed under the statutes. At the time of the trial, evidence was presented tending to show the deponent's inability to attend the court sessions because of physical incapacity. The court, over objection, permitted the reading of the deposition to the jury, and it appears before us as a part of the record of trial.

Section 11525, General Code, provides:

"When deposition may be used. The deposition of a witness may be used only when it is made to appear to the satisfaction of the court that * * * from age, infirmity, or imprisonment, [he or she] is unable to attend court * * *."

We have examined the evidence bearing upon the physical condition of the deponent, and are of the opinion that the trial court, in the exercise of its judicial discretion, did not err in permitting the read-

ing of the deposition to the jury under the provisions of the statute.

5. Examination has been made of the court's charge to the jury; the submission of the issues of negligence, contributory negligence and proximate cause; and we find, in such examination, no error prejudicial to the rights of the appellant.

We have furthermore examined all other errors claimed and find none of a prejudicial character.

The judgment will therefore be affirmed.

*Judgment affirmed.*

HUNSICKER, J., concurs.

STEVENS, P. J., dissenting. I find myself unable to agree with the conclusion announced by my associates.

From my reading of this record, I am unable to discern that plaintiff charged or proved actionable negligence of the defendant.

Then, too, it is my opinion that the plaintiff's own evidence shows the plaintiff to have been guilty of contributory negligence, proximately contributing to her injury, as a matter of law.

For these reasons, I think the judgment of the Court of Common Pleas should be reversed, and final judgment entered for the defendant.