Argued February 18, affirmed June 24, petition for rehearing
denied August 12, 1953

# ZIMMERMAN *v.* WEST COAST TRANS-OCEANIC STEAMSHIP LINES

258 P. 2d 1003

*John D. Mosser,* of Portland, argued the cause for

appellant. With him on the brief were Wood, Matthiessen, Wood & Tatum, of Portland.

*Richard R. Carney,* of Portland, argued the cause for respondent. With him on the brief were Kneeland C. Tanner and Edward J. Clark, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

BRAND, J.

The plaintiff, an able seaman on the SS Columbia Trader, brought an action at law under the Jones Act (Title 46 USCA, § 688) against the defendant West Coast Trans-Oceanic Steamship Line, a corporation, for damages on account of an injury to his back. Verdict and judgment were for the plaintiff, and defendant appeals.

The injury is alleged to have been suffered while plaintiff was engaged with the bosun in raising a hatch leaf from the lower hold of the vessel to the deck above called the 'tween deck. The hatch leaf was raised by means of a rope, or hand line, which was pulled by the plaintiff and the bosun. The essence of the plaintiff's claim is that "When the hatch leaf had reached about the level of the 'tween deck, the plaintiff got down on his knee and reached for the board. At that time the bosun suddenly slacked away on the line and threw all the weight of the hatch leaf on the plaintiff, causing his injuries."

The defendant admitted that it operated the steamship and employed the plaintiff, and denied the other allegations of the complaint.

The complaint alleges, in substance, that the defendant ordered the plaintiff, in the course of his employment, to go with the bosun to stand upon the 'tween deck level and to pull upon a line fastened to one of the hatch boards which had been stored in the lower hold of the vessel, and to lift the hatch board therefrom to the 'tween deck level. A rope had been tied to the hatch board by persons in the lower hold and the hatch board was raised until it "reached the square of the hold of said between-deck level." The defendant, through the bosun, ordered plaintiff to lower himself on his knees and bend over and take hold of a hand-grip with one hand for the purpose of lifting the hatch cover, "in addition to the pull of the line." The plaintiff bent over in said position and seized the hand-grip with his right hand, with his left hand still exerting a pull upon the rope, when

"the said bosun suddenly and without warning negligently eased away on said line and thereby threw most of the weight of said heavy hatch board upon the plaintiff holding the same by his said hand; that because of the mate and fellow-seamen below, the plaintiff could not permit said board to fall back into the lower hold, and by exerting extreme effort he held onto the same and thereby received the grievous injuries hereinafter alleged."

The allegations of negligence are as follows:

"(a) In not detailing and ordering an adequate and sufficient complement of the crew with bosun to said operation so that the same might be performed with safety and without over-exertion.

"(b) In not setting up proper gear at the upper square of the hold so that the hatch leaves or boards could be raised from the lower hold to the between-deck level by block and tackle method.

"(c) In not furnishing the plaintiff a safe and seaworthy place in which to work in the particulars herein alleged."

The remaining allegations of the complaint relate to the injuries alleged to have been proximately caused by the defendant.

During the trial of the case, both parties having rested, the plaintiff amended his complaint by adding the following assignment of negligence:

"(d) That the bosun suddenly and without warning eased away on the line, thereby throwing most of the weight of the hatch board on the plaintiff."

The answer, as we have said, amounted to a general denial.

■■■ The first assignment of error is to the effect that the court, on examination of witness Michael J. Kneezer, erred in failing to sustain objection to the following question and succeeding line of testimony:

"Q Do you know whether or not there is a usual and ordinary method used to carry out this work?

"MR WOOD: I object to the question as incompetent, irrelevant, and immaterial * * *."

Counsel for the defendant objected to the question as incompetent, "and as evidently a forerunner of a question whether it is usual or customary to lift hatch boards out of the hold in some other different manner." The specific ground of the objection was stated to be that such testimony would invade the province of the jury, that the operation was a simple one, and that the jury could pass upon it without the aid of expert testimony as to the customary method, or as to how it may be done in some other manner. He objected further upon the ground that it was not obligatory on the employer to provide the safest place to work, or the safest

method, the only obligation being to use ordinary care and a reasonably safe method. The objection was overruled and counsel for the defendant asked for a general objection to that line of testimony.

In answer to the question as to the usual and ordinary method of carrying on the work, the witness Kneezer testified, in substance, that the ordinary method is to rig a block and tackle above the 'tween deck, lower the tackle down into the hold, attach it to the handle of the hatch board and haul it up through the hatch opening of the 'tween deck. The witness then stated that two men, or maybe more, will pull up the hatch board. The witness testified:

"A * * * If it fouls up anywhere, one man can guide it away from the hatch or the beams when it comes clear. If it comes clear of the hatch you can swing it right in in the ordinary manner.

"Q Have you seen this method used often in your experience?

"A I have used it myself.

"Q Have you seen it used often when other people had charge of the work?

"A Well, at times, yes.

"MR. WOOD: At times, you say?

"THE WITNESS: Yes, on various ships."

He pointed out that by this method "you got a sure way of pulling it up, and it is safe, and you can control it at all times."

The admissibility of the evidence must be tested after consideration of other evidence with which it was connected. After the witness Kneezer had testified concerning the use of block and tackle for the purpose of lifting the hatch boards, he was asked, upon cross examination, "* * * what other way would you do it

under these conditions?'', to which he answered, ''Well, you can do it another, which is possible, but it is dangerous.'' Counsel for the defendant pressed the question as follows:

''Q  * * *  but you said this second way of doing it, that it was dangerous.

''A  Well, you throw a line down in the hatch. You can pull the line up over the hatch coaming. Then you got to stoop over and pick it up, and if the other man lets go of it you may go down in the hole.  When you are pulling it up that way you have got all that strain, and you have nothing to support yourself there.

''Q  You mean if two men are pulling it up by hand; is that what you mean?

''A  With a line, yes.

''Q  That's the way it was done in this case; you understand that, don't you?

''A  Yes, I understand that, yes.

''Q  That is another way of doing it though, isn't it?

''A  Yes, that is another way of doing it.''

The evidence indicates that the immediate cause of plaintiff's injury was the negligent action of the bosun in suddenly easing his hold on the line and allowing the 70-pound weight to jerk the plaintiff while he was on his knees in attempting to guide the board through the hatch. But, in view of the evidence that the method employed was dangerous, we think it was permissible to show that a safer method was in use and was feasible, which, if employed, would have eliminated the dangerous condition which made the injury possible.  The usual method of carrying on an operation may be shown, not as establishing the standard of reasonable care as a matter of law, but as evidence for the consideration of the jury in its determination as to whether the method used was reasonable.  It is not necessary

that the evidence of other methods should rise to the dignity of the proof of custom. *Silver Falls Timber Co. v. Eastern & Western Lumber Co.*, 149 Or 126, 40 P2d 703. We have held that where there is no absolute standard of care fixed by law, evidence of what is usual is admissible in determining issues of negligence. *Myrtle Point Transportation Co. v. Port of Coquille River*, 86 Or 311, 168 P 625. Furthermore, it was permissible for the witness to show, as he did, that there was a beam above the hatch from which a block and tackle might be suspended for raising the hatch boards from the hold. It is true that the testimony of the witness was weakened on cross examination, as to the extent of his personal experience with the method which he defined as the ordinary one. But the weight of his testimony was for the jury. Counsel for the defendant argues that the ship owner was not required to provide an absolutely safe method or appliance and that it is sufficient if equipment is employed which is "reasonably fit and safe for its purpose, and reasonably adequate to the place and occasion where used by direction of the owners." The Tawmie, 80 F2d 792. We agree; but the fact that the legal standard is reasonable fitness and safety rather than absolute safety, is immaterial, since we hold that the evidence offered was admissible on the issue of reasonable safety. It is also to be observed that the plaintiff, without objection, gave similar testimony when he said that the hatch boards "are usually slung up with the ship's gear." Although he admitted that the winches were used when several hatch boards were raised at a single time.

■ We are not greatly impressed by the contention that testimony of this kind "invades the province of the jury." The first assignment of error is without merit.

The second assignment of error involves the same question presented by the first. It is based upon the refusal of the court to withdraw from the consideration of the jury the specification of negligence concerning the failure to use block and tackle. For the reasons already set forth, we hold that the assignment is without merit.

██ The third and last assignment of error is based upon the failure of the court, upon request of the defendant, to withdraw from the consideration of the jury the charge that the defendant was negligent "In not detailing and ordering a sufficient complement of the crew" to said operation "so that the same might be performed with safety and without exertion." The plaintiff testified that two men handled the hatch boards which weigh 70 to 80 pounds each. He testified as follows:

"Q   Could two men do it?
"A   Two men do it.
"Q   And they do it easily, don't they?
"A · Yes."

If any objection was voiced against the two-man operation it went only to the extent that the plaintiff said, "Well, it was pretty hard pulling." The witness Kneezer, in describing the process of hauling the hatch board up from the hold testified:

"A   The line that is down in the hold, tie it on there. Then there is two men, or maybe more, will pull it up. If it fouls up anywhere, one man can guide it away from the hatch or the beams when it comes clear. If it comes clear of the hatch you can swing it right in in the ordinary manner."

The evidence quoted is not sufficient to warrant us in holding that there was any substantial evidence that more than two men were required in the operation of

lifting the hatch board, and there is no other evidence upon that issue. Nevertheless, the trial court refused to withdraw the issue from the jury, and in its instructions listed as one of the charges of negligence the failure to detail an "adequate and sufficient complement of the crew" for the task. In view of the record, it was both unnecessary and improper to submit that issue to the jury.

> "Before case can be submitted to jury, proof of material issues must have quality of reasonable certainty, and a finding dependent upon conjecture and speculation will not be permitted to stand." *Henderson v. Union Pacific Railroad Company,* 189 Or. 145, 219 P2d 170, headnote 6.

It remains for us to decide whether the error requires a reversal of the judgment. In its motion for a directed verdict, the defendant calls attention "that it is evidenced from plaintiff's own testimony that the proximate cause of his alleged injury was not either of the acts of negligence alleged in his complaint, but was rather the sudden slackening of the line by the Bosun", and from the defendant's brief we quote the following:

> "It is conceded that there was sufficient evidence supporting the allegation that defendant was negligent in that the bosun suddenly and without warning eased away on the line to warrant its submission to the jury."

Defendant contends, however, that the verdict cannot be upheld, although there was substantial and in fact undisputed evidence which required submission of the case to the jury. He points out that the verdict was general "and could have been based on any of the submitted issues of negligence."

Cases are cited in which this court found error, where an issue of negligence, unsupported by evidence,

had been left to the jury. *Henderson v. Union Pacific Railroad Company,* supra. In the case cited there were other compelling reasons for reversal of the judgment which are absent in the case at bar. In fact, reversal was required in the case cited because there was no evidence of aggravation of a previous diseased condition on which plaintiff's cause rested. It is not an authority requiring reversal in the pending case.

In the case at bar counsel relies on the remote possibility that the jury, in a simple case involving undisputed evidence of negligence proximately causing injury, may have rendered its verdict upon another theory which was unsupported by any evidence. The technical submission to the jury of the issue concerning the alleged failure to assign a sufficient complement of the crew to the job constituted error, but in view of the whole record, the court is of the opinion "after consideration of all the matters thus submitted that the judgment of the court appealed from was such as should have been rendered in the case." That judgment was in the sum of $5000. Therefore, invoking the provisions of Constitution Article VII, § 3, quoted above, we affirm the judgment "notwithstanding the error committed during the trial."

The case at bar presents a different question from that on which the decision was based in *Hust v. Moore-McCormick Lines, Inc.,* 180 Or 409 at 419, 177 P2d 429. In that case this court was asked to scale down an excessive verdict and itself determine the amount of damages. The court held that Oregon Constitution, Article VII, § 3 did not authorize any such action in a case under the Jones Act because it would affect fundamental rights which are controlled by federal decisions on substantive rights, one of which was the right growing out of the seventh amendment to the federal Consti-

tution which prohibts a court from reducing an excessive verdict and entering a judgment for a lesser sum without consent of the plaintiff.

In the case at bar we invoke only a procedural rule of state practice in affirming the verdict and judgment, nothwithstanding error. The verdict of the jury is upheld, not impeached. The judgment is affirmed.