Argued March 16, reargued July 5, reversed September 20, 1961

# POWELL *v.* MOORE
### 364 P. 2d 1094

*Philip A. Levin,* Portland, argued the cause for appellant. On the briefs were Pozzi & Wilson, Portland.

*Thomas H. Tongue,* Portland, argued the cause for respondent. With him on the brief were Parker & Duffy and Fred B. Duffy, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

Plaintiff was injured as a result of falling from a loading ramp while assisting defendant's servant in loading defendant's moving van. There was a verdict for plaintiff. Defendant moved for a judgment n.o.v., or in the alternative for a new trial. The motion for a judgment n. o. v. was granted. Plaintiff appeals.

Plaintiff employed defendant to move plaintiff's household furnishings. In making arrangements for the service it was agreed that plaintiff and his son would assist in the moving operation; defendant was to supply the moving van and the driver. When the van arrived at plaintiff's home he and his son helped prepare for the loading operation. At the driver's request, they assisted him by removing the loading gangplank or ramp from under the truck while the driver prepared to back the truck to the porch. When the truck had been backed to a point near the porch, plaintiff and his son laid one end of the ramp on the

porch and the other end on the rear of the truck. One end of the ramp was damaged and rough, the metal band around the beveled portion at the end of the ramp having been broken. Plaintiff and his son put the rough end on the truck to prevent scratching plaintiff's newly painted porch. Soon thereafter the driver and plaintiff's son reversed the position of the ramp so that the rough end rested upon the porch. Plaintiff objected to this, pointing out to the driver that the rough end of the ramp would scratch the surface of plaintiff's porch. Plaintiff testified that "when he [the driver] made the change I made a squawk about the ragged end there would scratch my porch." Heeding this complaint, the driver folded a blanket or moving pad and placed it under the end of the ramp to protect the porch. At that time one end of the ramp overlapped the full width (approximately two feet) of the tailgate of the truck and the other end extended onto the porch approximately three feet.

The driver, plaintiff and plaintiff's son then proceeded to load the truck. After making several round trips in carrying furniture from the house to the truck, when plaintiff stepped onto the ramp the ramp slid away from the truck and plaintiff fell to the ground and received the injuries for which he now seeks to recover. In describing the incident plaintiff stated that he "started down this gangplank and it just shot right out from under me across the porch and let me down."

Plaintiff's son testified that the driveway leading to the front of plaintiff's house sloped downward toward the porch and that "the truck setting up on the driveway made it quite a bit higher than the porch." Plaintiff estimated that the slope of the ramp was between two feet and two and one half feet from the

end of the tailgate to the porch. The ramp was approximately fourteen feet in length. The testimony was conflicting as to the manner in which the blanket was employed to protect the porch from damage. Plaintiff's son testified that the blanket was "a full sized furniture blanket" and that it was "rolled up in a small wad to protect the porch." The driver testified that he "placed a small moving pad underneath the end of the plank." When asked, "Didn't you roll this pad up kind of to put under the end of the plank?" he replied, "No, it was just a scrap. You generally have little scraps of moving pads just more or less of a rag, and it was thin and I may have folded it once to keep the end from sticking out the foot of the board." He further testified as follows:

"Q Was this done at anyone's request?
"A No, not that I know of. I laid it down there for the good of their property."

There was evidence tending to show that the possibility that the ramp would slide was brought to the attention of the driver. Plaintiff's son testified as follows:

"Q Did he make any comment concerning putting this blanket under there?
"A I said something to him, and I don't recall what it was now, whether he thought that would lay there. He said, 'Yeah, it's all right there', so I don't remember what I said to him about it—that is, the exact words. It occurred to me at the time that I wanted to ask him about it.

"Q You asked him about it, and he said it was all right?
"A Yes."

The evidence leaves no doubt that the driver was in charge of the moving operation including the adjust-

ment of the ramp on the truck and porch and the adjustment of the blanket under the end of that ramp. As we have already indicated, he testified that the placing of the blanket under the end of the ramp was his own idea. He further testified as follows:

"Q  Did you set the plank up for the moving in and out process?

"A  That I couldn't be sure.

"Q  Wouldn't you generally supervise the setting up of the plank?

"A  That's right, if it wasn't in a proper place I would have fixed it."

When the verdict was returned for plaintiff, defendant moved for a judgment n. o. v. or in the alternative a new trial asserting that there was no evidence of any negligence on the part of defendant and further that there was evidence that plaintiff assumed the risk or was guilty of contributory negligence.

The contention that plaintiff assumed the risk is not supported by the evidence. The evidence did not establish that plaintiff was aware of and knowingly encountered the risk involved in using the ramp. There was, however, evidence that plaintiff failed to exercise reasonable care for his own safety and that question was properly submitted to the jury assuming, of course, that there was sufficient evidence of defendant's negligence to submit the issue of his negligence to the jury. The crucial question on this appeal is whether there was such evidence.

■ Defendant argues that the ramp in question, and other ramps owned by defendant, had been used in defendant's business for a long period of time; that similar ramps had been used by others in the moving business; that such ramps are customarily used without hooks or fastening devices and that there was no

evidence that the ramp used was other than "reasonably safe and of a kind generally used for that purpose," relying upon *Freeman v. Wentworth & Irwin, Inc.*, 139 Or 1, 11, 7 P2d 796 (1932). There was no proof of custom to establish the type of ramp generally used in the moving trade. If the equipment was inadequate to protect those using it from suffering injury, compliance with custom of course would not excuse defendant from liability for its use. *Zimmerman v. W. Coast T-O SS. Lines*, 199 Or 78, 84-85, 258 P2d 1003 (1953); *Adkins v. Barrett et al.*, 196 Or 597, 606-607, 250 P2d 387 (1952); *Robertson v. Coca-Cola Bottling Co.*, 195 Or 668, 680, 247 P2d 217 (1952); *Silver Falls Co. v. E. & W. Lbr. Co.*, 149 Or 126, 176-179, 40 P2d 703 (1935); 2 Harper & James, Torts (1956) § 17.3 and see § 16.2, p. 902; Prosser, Torts (2nd ed 1955) § 32, pp. 135-137; Morris, Custom and Negligence, 42 Colum L Rev 1147 (1942). But even if it had been established that the ramp was without defect and adequate when properly used, the circumstances in the case at bar were such that the jury could have found that, because of the slope of the ramp, the footing upon which it was rested and other factors, the ramp, although without defect, was negligently used.

The evidence clearly established that defendant's driver was in charge of the loading operation, including the location and adjustment of the loading ramp. The jury could have found that the blanket was "rolled up in a small wad" as plaintiff's son testified; that with such an insecure footing the ramp, sloping as it did, would be susceptible to sliding along the surface of the newly painted porch; that the driver had some warning of the possible danger by the question put to him by plaintiff's son as to

"whether he [the driver] thought that [the blanket] would lay there"; and that the failure to foresee the possibility of the ramp sliding and falling away from the truck constituted negligence.

■ The question of whether the evidence in a particular case is sufficient to go to the jury is often a difficult one. It is the jury's task to evaluate conduct and test it against the standard of the community. "Generally it is for a jury to say what the reasonable man would foresee. The reasonable man represents the general level of community intelligence and perception and the jury, being a cross section of the community, should best be able to tell what that general level is." 2 Harper & James (1956) § 16.10, p. 936. The function of the jury in determining whether the defendant has failed to conduct himself in accordance with the community standard is more specifically described by the same authors as follows:

"As a general proposition it is not essential to a party's case that he prove or otherwise show what his opponent *should have done* under the circumstances. It is enough to show *what he did,* and what the circumstances were. It is then for the jury to determine whether, in the light of their common experience in the affairs of men, they find he failed to act as a reasonable man would have acted. This implies that there was some concrete thing that he could have done or omitted to do, and that such act or such omitted precaution was reasonable and feasible, and would have been effective to prevent injury under the circumstances. But if it is within the competence of men of affairs generally to make this judgment in a given case, the jury may make it even though there is no proof or statute or regulation in the case which points directly to any specific precaution that could reasonably have been taken and even though the jury themselves are not satisfied

as to the precise nature of what ought to have been done. In this sense the jury need not fix or agree upon a standard of conduct of precautions to be taken, but need only find that the conduct of the party falls short of *any* standard which they would agree upon as reasonable. The jury's finding of negligence is thus always that the actor *should not* have acted as he did; this implies a finding that he *should have acted otherwise, but not necessarily in any specific manner.*" 2 Harper & James, Torts (1956) § 17.1, pp. 963-965.

See, *Grant v. Bottling Co.,* 176 N C 256, 97 SE 27, 28, 4 ALR 1090 (1918); *Campbell v. Hughes Provision Co.,* 87 Ohio App 151, 94 NE2d 273, 276-277 (1949), affirmed 153 Ohio St 9, 90 NE2d 694 (1950); James and Sigerson, Particularizing Standards of Conduct in Negligence Trials, 5 Vanderbilt L Rev 697 (1952).

■ We are not permitted to remove from the jury the question of defendant's negligence unless we can say that defendant did not in any respect fail to exercise due care and that it would be impossible for reasonable men sitting as a jury to conclude that he did. See, James, Sufficiency of the Evidence and Jury—Control Devices Available Before Verdict, 47 Va L Rev 218, 224-225 (1961). There is ample evidence in the case at bar upon which the jury could base a verdict against the defendant on the theory that defendant was negligent.

■ It is argued that plaintiff had equal knowledge of the risks involved in using the ramp and that if defendant could have foreseen the danger it necessarily follows that plaintiff likewise could have foreseen the danger and that, therefore, plaintiff was contributorily negligent as a matter of law. But the jury might well have found that the defendant and his

servant, the driver, through their experience in using the ramp had acquired a superior knowledge of the dangers involved in its use and that consequently their duty to take precautions against those dangers was greater than the duty of plaintiff to ascertain these dangers in the course of using the ramp. As we have already indicated, the evidence clearly established that the adjustment of the ramp was made by defendant's servant, the truck driver, and plaintiff relied upon him to place the ramp in such a way that it could be used safely. The question of whether plaintiff was barred by contributory negligence was for the jury. It is our conclusion that the issues in this case were properly submitted to the jury and that it was error to enter a judgment n. o. v.

The defendant's alternative motion for a new trial, which was denied, requires us to examine the alleged errors of the trial court in submitting certain matters to the jury.

The trial court regarded the case as falling within the doctrine of res ipsa loquitur and instructed the jury accordingly. Defendant contends that the doctrine of res ipsa loquitur is not applicable and he further contends that even if it is held to be applicable, the instruction was not adequate. The instruction was as follows:

"However, under certain circumstances when it is found that the thing causing the accident is under the sole management and control of the defendant, and when the circumstances are that the accident would have happened regardless of any voluntary action on the plaintiff's part, and where the circumstances are that the accident is such as in the ordinary course of things would not have happened, if those who had such management or control used proper care, the happening of the

accident then itself could afford evidence in the absence of explanation by the defendant that the accident happened because of the negligence of the defendant.

"In this case, if you find that these circumstances which I have just enumerated existed, the facts of the accident can afford some evidence of negligence on the part of the defendant. However, this does not mean necessarily that the defendant was negligent and that the plaintiff must still prove negligence by a preponderance of the evidence."

We shall first address our attention to the question of the applicability of the res ipsa loquitur doctrine. The elements of the doctrine are set out and commented upon in several of our previous cases. *Short v. D. R. B. Logging Co.*, 192 Or 383, 232 P2d 70, 235 P2d 340 (1951); *Gow v. Multnomah Hotel, Inc.*, 191 Or 45, 224 P2d 552 (1950), mandate amended, 191 Or 65, 228 P2d 791 (1951); *Ritchie v. Thomas et al.*, 190 Or 95, 224 P2d 543 (1950); *Dunning v. Northwestern Electric Co.*, 186 Or 379, 199 P2d 648 (1948), reversed on rehearing 186 Or 399, 206 P2d 1177 (1949); *Suko v. Northwestern Ice Co.*, 166 Or 557, 113 P2d 209 (1941); *Eldred v. United Amusement Co.*, 137 Or 452, 2 P2d 1114 (1931); *Francisco v. Circle Tours Sightseeing Co.*, 125 Or 80, 265 P 801 (1928); *Boyd v. Portland Electric Co.*, 41 Or 336, 68 P 810 (1902). In *Gow v. Multnomah Hotel, Inc.*, supra, the doctrine was described as follows:

"Although there have been some modern accretions, the essence of the doctrine known as res ipsa loquitur has never been better stated than in its first formulation in 1865. The court said:

" 'There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or

his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' 3 H. & C. 596, 159 Eng. Rep. 665.

"The modern statement of the doctrine frequently follows the formulation by Wigmore:

" 'What the final accepted shape of the rule will be can hardly be predicted. But the following considerations ought to limit it: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. * * *' Wigmore on Evidence, Vol. 9, 3d Ed., § 2509, p. 380."

■ We think that in the "ordinary instance" a ramp, used under the circumstances which attended the use of this ramp on this occasion, would not slip and fall unless someone was negligent. For the reasons which we have set out above the inference is strong that it was the failure of defendant's servant to exercise care in placing the ramp between the truck and the porch in a safe manner which caused the ramp to fall. We regard the evidence as sufficient to show that both inspection and use of the ramp were in the control of defendant's servant and also that the probability that defendant's conduct was the cause of the fall is greater than the probability that the fall resulted from the negligence of another, including plaintiff. This aspect of the res ipsa loquitur doctrine is

explained in 2 Harper & James (1956), § 19.7, p. 1086, as follows:

"* * * The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence connected with it.' [Prosser, Res Ipsa Loquitur in California, 37 Calif L Rev 183, 201 (1949)]. That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door. Here again, as in the case of the first requirement, there is wide range for judicial guesswork about relative probabilities."

■■ Defendant argues that plaintiff participated in placing the ramp in position and that, therefore, the doctrine of res ipsa cannot apply as it is not applicable unless "[t]he possibility of contributing conduct which would make the plaintiff responsible is eliminated." Prosser, Torts (2d ed 1955) 199. But, as is pointed out in the explanatory text, the requirement that plaintiff's contributing fault be eliminated does not preclude the operation of the doctrine in every case in which there is evidence of the plaintiff's use of equipment furnished by the defendant. It is explained that "the requirement may be easily misunderstood. The plaintiff is seldom entirely static, and it is not necessary that he be completely inactive, but merely that there be evidence removing the inference of his own responsibility." The thought is expressed more explicitly, with respect to cases such as the one at bar, in the footnote where it is said that "[t]his is true particularly where the plaintiff has done nothing abnormal, and has only used a thing

for the purposes for which it was intended." Prosser, Torts (2d ed 1955) p. 208. See also, *Gow v. Multnomah Hotel, Inc.*, 191 Or 45, 54-65, 224 P2d 552 (1950), mandate amended, 191 Or 65, 228 P2d 791 (1951); 2 Harper & James, Torts, § 19.8 (1956); Prosser, Res Ipsa Loquitur in California, 37 Calif L Rev 183, 201-202 (1949). And even where there is some evidence that plaintiff's failure to exercise care in the use of defendant's equipment was a contributing cause producing the injury, the doctrine is not excluded as a matter of law; rather the case is to be submitted to the jury with proper instructions permitting the jury to draw the inference of defendant's negligence if it finds that plaintiff by his own conduct was not responsible for causing his injury. *Gow v. Multnomah Hotel, Inc.*, supra, 191 Or at 59-64; *Johnson v. United States*, 333 U S 46, 50, 68 S Ct 391, 92 L Ed 468 (1948); *Jesionowski v. Boston & Maine R. Co.*, 329 U S 452, 458, 67 S Ct 401, 91 L Ed 416, 169 ALR 947 (1947); 2 Harper & James, Torts (1956) § 19.8; Prosser, Torts (2d ed 1955) 209.

■ In the present case we cannot say as a matter of law that the jury could not reasonably find that plaintiff was not responsible for his own injury. There was no evidence that the ramp had moved as a result of plaintiff's use of it. On the other hand, there was no competent evidence that the ramp had not moved, although plaintiff, his son and the driver all testified that they had not noticed any decrease in the overlap of the ramp on the tailgate. The instruction given by the trial judge informed the jury in effect that the doctrine of res ipsa loquitur would not apply unless "the circumstances are that the accident would have happened regardless of any voluntary action on the plaintiff's part." This instruction precludes drawing

the general inference of defendant's negligence even though plaintiff's "voluntary action" was neither negligent nor a causal factor in producing his injury. In that respect the instruction was more favorable to defendant than that to which he was entitled.

We hold that the doctrine of res ipsa is applicable to the case at bar and that the instruction explaining the doctrine was not prejudicial to defendant.

■ Defendant reminds us that in *Ritchie v. Thomas et al.,* 190 Or 95, 113, 224 P2d 543 (1950) a question was raised as to whether it is ever permissible to instruct the jury on res ipsa loquitur. In that case it was said:

> "* * * Since the effect of the rule is merely to take the plaintiff's case to the jury, we see no more reason for requiring the court to comment on this type of circumstantial evidence than upon any other type. Whether it would be reversible error for a trial court to instruct on the inference which arises in this type of case is a matter which need not now be decided."

We believe that it is proper for the court to instruct the jury with respect to the permissibility of drawing the inference of defendant's negligence from the facts of the occurrence in appropriate cases. It is true, as the quotation from the Ritchie case indicates, that res ipsa loquitur is simply a rule relating to a particular kind of circumstantial evidence. However, res ipsa permits the drawing of an inference which rests upon no specific causative circumstance in the case; and it is quite possible that without an instruction the jury would not realize that it is permissible to draw the inference of defendant's negligence from the fact that in common experience the accident in question would not ordinarily occur in the absence of

negligence on the part of the defendant. "[T]he jury cannot pass intelligently upon the question whether the inference of negligence should be drawn, unless, in language which it can understand, it receives an explanation of why the evidence would permit an inference of negligence, and why the jury may reject such inference if it sees fit." *Foltis, Inc. v. City of New York,* 287 N Y 108, 124, 38 NE2d 455, 464, 153 ALR 1122 (1951).

■ Error is charged in that the trial court failed to withdraw from the jury certain specifications of negligence. One of these specifications was that defendant failed to provide plaintiff with a reasonably safe place to work, reciting the defendant's failure to use care in placing the ramp on the truck and porch, in placing the blanket under the end of the ramp, and in other particulars. Since defendant and plaintiff were not in a relationship of employer-employee, defendant did not owe an employer's duty to furnish to his employee a safe place to work. However, defendant did have a duty to plaintiff as a business invitee, which duty required defendant to warn of dangers known to him or which were discoverable upon reasonable inspection. *Welter, Adm'x v. M & M Woodworking Co.,* 216 Or 266, 274-276, 338 P2d 651 (1959); Prosser, Torts (2d ed 1955) 459. In this sense, then, defendant was required to furnish a safe place for plaintiff to be while he was upon defendant's equipment and while plaintiff was working. The instruction would be prejudicial to defendant only if it were taken to mean that defendant had a duty greater than that owed to an invitee. Taking the instruction as a whole, we do not believe that the jury would have so construed the charge.

■ Error is claimed also for failing to withdraw from the jury the following specification of negligence:

> "In failing to warn plaintiff of said defective and unsafe manner of placing said gangplank, when defendant knew or ought to have known in the exercise of reasonable care that such gangplank would be liable to slip or skid while being used by plaintiff in such moving operation."

As we have already stated, defendant owed to plaintiff invitee the duty to inspect the premises to discover possible defects. This would include the duty to determine by inspection whether the ramp as placed created an unreasonable risk to plaintiff. If such a risk was ascertainable by a reasonable inspection, defendant had the duty to warn plaintiff of the risk. The specification described this duty.

There is no basis for the granting of a new trial. Therefore, the judgment of the lower court is reversed with directions to reinstate the verdict and enter judgment thereon.

Judgment reversed.

ROSSMAN, J., specially concurring.

The defendant placed a pad under the end of the ramp that rested upon the recently painted floor of the porch. The ramp definitely sloped downward from the tail end of the truck to this pad. As the men stepped from the body of the truck onto the ramp and down the latter they inevitably gave the ramp an impulse or spur to skid upon the pad and away from the tailgate. The ramp was not fastened to the truck so as to prevent it from moving therefrom. The plaintiff's son directed the attention of the defendant's driver to this situation. The latter could readily warrant the jury in inferring that the

defendant was negligent. The doctrine of res ipsa loquitur does nothing more than authorize an inference of negligence from circumstantial evidence in some cases. *Dunning v. Northwestern Electric Company*, 186 Or 379, 199 P2d 648. The doctrine could do nothing more than the reason of the jury apparently did from the facts just stated. It was unnecessary to employ that rule in this case, but its employment can not be deemed prejudicial to the defendant.

I concur.

MCALLISTER, C.J., joins in this opinion.