Argued January 30, and submitted on requested supplemental briefs March 18,
affirmed July 29, 1986

## McKEE ELECTRIC COMPANY, INC. et al,
### *Respondents on Review,*

*v.*

## CARSON OIL COMPANY,
### *Petitioner on Review.*

### (No. A8108-04708; CA A29903; SC S31235)

723 P2d 288

Timothy N. Brittle, Portland, argued the cause for petitioner on review. With him on the briefs was Acker, Underwood & Smith.

Richard L. Grant, Portland, argued the cause for respondents on review. With him on the briefs were James K. Buell and Buell, Black & Dupuy.

LENT, J.

## LENT, J.

The issue is whether on the pleading and evidence the plaintiff[1] was entitled to an instruction on res ipsa loquitur. We hold that the plaintiff was entitled to the instruction.

This is an action to recover damages for physical harm to property and consequential damages incurred in repairing the property. The plaintiff contends that negligence of the defendant caused a fire that resulted in physical harm to the plaintiff's property. The defendant denied that it was negligent or that it caused the fire. The defendant counterclaimed for damages, contending that the plaintiff's negligence caused the fire and the resulting physical harm to the defendant's property.

The jury decided that the plaintiff was 20% at fault and defendant was 80% at fault; consequently, the plaintiff had judgment on its claim. The defendant's assignments of error on appeal went only to the verdict for the plaintiff. On appeal the defendant contended that it was entitled to favorable rulings on its motion for directed verdict against the plaintiff's claims, its motions to withdraw the plaintiff's specifications of negligence and its motion against the plaintiff's claim for consequential damages. Defendant also claimed error because the trial court instructed on the doctrine of res ipsa loquitur, contending not that it was improper to instruct at all on the doctrine but only that it was improper on the pleading and evidence in this case.

The Court of Appeals held that there was no error with respect to the trial court's denial of the motion for directed verdict, its rulings on withdrawal of the specifications of negligence and its instructions on res ipsa loquitur. *McKee Electric Co. v. Carson Oil Co.,* 70 Or App 1, 688 P2d 1360 (1984). The Court of Appeals remanded for a new trial on the issue of consequential damages.

The defendant petitioned for review, contending only that the Court of Appeals erred in concluding that "expert testimony was not necessary to enable plaintiff to establish

---

[1]There are actually four named plaintiffs. They are a closely held corporation, Mr. and Mrs. McKee, the two principal shareholders of the corporation, and the corporation's insurer. We have no occasion to refer to the insurer. Where we speak of plaintiff, we mean the corporation.

negligence" and in concluding that "the issue of res ipsa loquitur was properly submitted to the jury." We allowed that petition for review.

Defendant's petition for review was timely filed. The plaintiff did not timely file a petition for review but filed a response. ORAP 10.05(5) allows a response to be filed within 21 days after the petition for review has been filed. The plaintiff filed its response almost seven weeks after the petition for review had been filed, although within 21 days after this court had allowed the defendant's petition for review. In its response, without any indication whatsoever on the cover, the plaintiff included a petition for review of the Court of Appeals' decision on consequential damages. This was untimely as a petition for review; it was untimely as a response. We never allowed it as a petition for review. In our supplemental questions to the parties after allowance of the defendant's petition for review, we did not address the plaintiff's contentions raised in the petition for review buried in its response.

■   Under ORAP 10.05(5) the winning party's brief in the Court of Appeals is considered as a response to the losing party's petition for review if no response is filed in this court. The defendant's petition for review is completely silent on the issue of the plaintiff's claim for consequential damages; therefore, we do not consider the plaintiff's brief in the Court of Appeals to be a response to any issues other than those raised in the defendant's petition for review.

■   In these circumstances, despite ORAP 10.15(2), we choose not to consider the plaintiff's contentions of error with respect to the issue of consequential damages.[2] We express no opinion on the validity of those contentions.

## THE COMPLAINT

The plaintiff's claim for relief is for negligence. The

---

[2] ORAP 10.15(2) provides:

"If the Supreme Court accepts review, it may limit the questions on review. If review is not so limited, the questions before the Supreme Court include all questions properly before the Court of Appeals that the petition or the response claims were erroneously decided by that court. The Supreme Court's opinion need not address each such question. The court may consider other issues that were before the Court of Appeals."

complaint alleges that the defendant made a delivery of gasoline to an underground tank on the plaintiff's premises and

> "in a reckless, careless and negligent manner caused the gasoline being delivered to ignite, spread and damage the building located thereon, the personal property located therein, and the motor vehicles located thereon as will be more fully described hereafter."

The plaintiff then pled that the cause of the damage was the negligence of the defendant in certain particulars and described the damage in detail. Of the particular charges of negligence, the following four were eventually submitted to the jury:

> "Defendant's driver was standing on an elevated loading dock away from his truck so that he could not quickly get to the pump controls and shut off the pump.

> "In positioning its truck in close proximity to the fill pipe and vent pipe of the underground tank which was being filled.

> "In overfilling the tank causing the nozzle of the delivery hose to come out of the fill pipe and discharge gasoline.

> "In causing gasoline to discharge from the vent pipe."

### THE FACTS

There was evidence from which the jury could have found the following.

On the east side of the plaintiff's building was a paved area. Extending from the south wall of the building in an easterly direction was a concrete ledge about two feet high separating the paved area east of the building from another parking area south and southeast of the building. The paved area north of the ledge sloped away from the building to the east. Underneath the paved area was the tank.

The fill pipe for the tank was located about six feet from the east wall of the building and about eight to ten inches north of the ledge. About 24 to 28 feet north of the ledge and two or three feet east of the building was the vent pipe, which was about 11 feet high and had a "cap," which would cause escaping vapor to deflect downward. Immediately east of the vent pipe was a gasoline pump used to dispense gasoline from the tank.

The underground tank had a capacity of 2,000 gallons. The tank had an offset fill pipe, and there was no way to measure how much gasoline was in the tank. The defendant had filled the tank on many prior occasions. Sometimes the plaintiff had allowed the tank to run dry before ordering a fill. On other occasions the plaintiff had ordered a specified amount of gasoline to be delivered. On this occasion the plaintiff had simply ordered the tank to be filled, not indicating whether or not it was empty.

On prior occasions the defendant's drivers had sometimes positioned the delivery truck north of the ledge and sometimes south of the ledge. On this occasion the driver positioned his vehicle parallel to and north of the ledge with the front of the truck facing west and about two feet from the east wall of the building. He so positioned the truck because if he had parked it either south of the ledge or farther east he could not completely drain his truck's tanks.

The driver hooked up his delivery hose, inserted the hose's metal nozzle into a rubber cone and pushed the rubber cone into the fill pipe, thus making an airtight seal. This positioning of the truck meant that the fill pipe was between the driver's side of the truck and the ledge.

In order to discharge gasoline from the truck's tanks into the fill pipe, it was necessary to keep the truck engine running. The power takeoff unit was located at the driver's side of the truck. The driver engaged the unit and emptied one of his truck tanks, putting about 1,050 gallons of gasoline in the plaintiff's tank. While doing so, the driver moved to a place near the ledge to see the vent pipe, which he could not see from the driver's side of the truck where his controls were located.

After emptying his first tank, the driver disengaged the unit and made ready to draw from another of his tanks. He engaged the unit and moved back onto the ledge about 20 feet from his controls. At that time he was pumping about 140 gallons per minute, thus not using the full capacity of the system, which could pump about 2,300 gallons per minute.

After about 300 gallons had been pumped, the diesel engine of the truck began to race. This would have the effect of pumping more gasoline per minute. As he started down from

the ledge to go to his controls, the driver saw gasoline coming from the fill pipe area. He shut off the pumping. There was then an explosion, and a fire began. About 10 to 15 seconds elapsed from the time the engine began to race to the time of the explosion.

The purpose of the vent pipe is to vent gasoline vapor and air from the tank while it is being filled. Gasoline vapor is heavier than air; therefore, the cap on the vent, the slope of the area and a strong east wind if blowing at the time could cause any vapor from the vent pipe to move toward the truck engine and produce the racing. On the other hand, if gasoline were coming from the fill pipe, vapor from that gasoline could reach the engine and cause the racing.

After the fire, there was gasoline in the fill pipe about eight inches from the top.

At no time during the delivery and the start of the fire was any employee of the plaintiff present. The only eyewitness was the defendant's driver.

### THE COURT'S JURY INSTRUCTIONS

The defendant objected to the court instructing the jury concerning the doctrine of res ipsa loquitur:

"In any event, our objection to Res Ipsa Loquitur is that it's not pleaded, number one; and, number two, that it has no application to this case in any event, when we talk about exclusive control in the context of the cases cited, among others, in the ALR 3d citation [32 ALR 3rd 1169] which I referenced.

"There is a split in the application of these types of case, depending on whether there is any element of causation attributable to anyone other than the party delivering the gasoline. And in this case, there is certainly an element of causation attributable at least factually to the Plaintiffs by virtue of possible Code violations.

"The exclusive control aspect of it, therefore, is not present in this case and Res Ipsa should not therefore apply."

After remarks by the court concerning the relaxation of the requirement of control by a defendant, counsel continued his objection:

"There are other aspects that is — this is the type of situation that doesn't happen in the absence of someone's

negligence. We have a rather unique set of circumstances here in which wind contributed apparently, according to the testimony, at least to the vent coming down into the engine and the engine running away. The engine running away increasing pump pressure, popping the nozzle out, gasoline spewing around.

"I don't agree that this is the type of situation that necessarily or even impliedly happens through someone else's negligence, and it's another reason why Res Ipsa, I believe, would not apply in the facts of this case.

"* * * * *

"Again I draw the Court's attention to the fact that we are talking about the standard of care of someone who is in the field, not known in general to the jury, and that in such cases such as medical malpractice or lawyer malpractice, whatever the field of specialty may be, but there is a requirement in our law that there be an expert in that field who can come in and testify that the individual concerned did something which was not within the recognized standard of that particular provision."

The trial court informed the defendant's counsel that the court did not believe that it was necessary to plead res ipsa loquitur.

After a recess, the defendant's counsel cited to the court *Thorp v. Corwin,* 260 Or 23, 488 P2d 413 (1971), stating that the case stood for the proposition that where specific allegations of negligence are pleaded, the doctrine of res ipsa loquitur is limited to those specific allegations. Counsel continued:

"Now, I don't know what the Court's intent was. If the Court's intent was to simply say that Res Ipsa may apply to the specific allegations of this case as they are left in the case, then I think *Thorp vs. Corwin* could be consistent with that. I had some trouble framing the language, but that's my intent, and I believe that's the current state of the law. That the Res Ipsa Loquitur, for a specific act of negligence to be pled, the Res Ipsa Loquitur has to arise out of those acts of conduct."

Counsel then renewed his argument that expert witness opinion evidence was necessary to make a jury question on negligence in this case and for the doctrine to apply.

After the lawyers had argued to the jury, the trial court instructed in part as follows:

"The fact that there was this explosion and this fire or that a person was injured or damaged is no indication that anyone was at fault. However, you may find that the Defendant was at fault if you find all the four elements are proven — excuse me, all of the four following elements are proven.

"First, that the fire damage was caused by igniting spilled gasoline. Secondly, at the time of the incident, the delivery truck and discharge of gasoline was under the control or management of the Defendant.

"Third, the Plaintiff's contribution to the incident did not preclude negligence on the part of the Defendant as alleged in Plaintiff's complaint.

"Fourth, in the normal course of events, the incident would not have occurred unless the Defendant was at fault.

"In this case, in order for either party to prevail on their claim for money damages, that party must prove by a preponderance of the evidence that the other party was at fault in at least one of the ways alleged in their pleadings which was a cause of damage to that party, and that such fault upon the part of that party was at least equal to or greater than any fault of the other party. * * *

*"Now, that applies to the specific acts of negligence which are contained in pleadings and which I'll review with you shortly.* [Emphasis added.]

"* * * * *

"* * * Well, you might say to yourselves: If they [the pleadings] are not in evidence, why is the Judge going to take our time to review the pleadings. Well, jurors, the pleadings do play a very important function in a trial, and that is that in your deliberations you may not go outside of the issues raised in the pleadings."

The trial court then went on to review the claims of the plaintiff that were being submitted to the jury, telling the jury that the plaintiff contended that the negligence of the defendant consisted of the four specifications set forth above (301 Or at 343). The trial court concluded this aspect of the instructions as follows:

"Now, it's the Plaintiffs' contention that those acts of negligence caused the damage that the Plaintiffs complain of."

The defendant's counsel excepted as follows:

"We would except to the instruction based on our belief that this is not a case drawing into applicability the Doctrine of Res Ipsa, particularly as related in the fourth of the elements of the instructions as given to the jury that this is the type of accident that wouldn't have happened except for Defendant's fault. And based upon the absence of any negligence, any proof in this case that is in fact the situation, any expert witness to that effect."

## BASIS IN THE COMPLAINT TO APPLY RES IPSA LOQUITUR

■　　　We shall first consider whether the plaintiff's complaint permitted an instruction on res ipsa loquitur. The doctrine is nothing but a Latin phrase that recognizes a possible effect of circumstantial evidence. It is a rule of evidence. *Watzig v. Tobin,* 292 Or 645, 648, 642 P2d 651 (1982). A rule of evidence should not be pleaded in a claim for relief. "A pleading which asserts a claim for relief * * * shall contain: A. A plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition." ORCP 18A. It would not be proper to label the claim as being dependent on application of the doctrine of res ipsa loquitur. A plaintiff need only plead ultimate facts that, if true, show that an injury occurred in circumstances that more probably than not would not have occurred in the absence of negligence on the part of the defendant.

The defendant's argument, however, is that the plaintiff pleaded only specific allegations of negligence and that the defendant did not receive notice that the plaintiff intended to rely on res ipsa loquitur. A second argument by the defendant is that because the complaint contained only specific charges of negligence, the court could instruct on res ipsa loquitur only as it applied to those specifics, but the court here did not limit application of the doctrine to the specific charges of negligence.

The general rule of pleading to invoke the doctrine is set forth in *Short v. D.R.B. Logging Co.,* 192 Or 383, 393, 232 P2d 70, 235 P2d 340 (1951):

"The rule in Oregon is that, where a plaintiff makes specific allegations of negligence in his complaint, he may invoke *res ipsa loquitur,* if applicable, as to such specific acts. * * * [citations omitted.] Lest we be misunderstood, we hasten

to add that, of course, he may if he wishes, allege negligence both generally and specifically, and invoke *res ipsa,* if applicable, as to either or both."[3]

In this case the plaintiff argues that it pleaded negligence both generally and specifically. It points to its allegation quoted above that the defendant "in a reckless, careless and negligent manner caused the gasoline being delivered to ignite, spread and damage" the plaintiff's property. Taken alone this might be considered a general allegation of negligence, but at the end of the paragraph in which those words appear the plaintiff has added "as will be more fully described hereafter." It might be considered that these last words apply only to the claims of injury, but it is just as logical to infer that they apply both to the allegation of negligence and the claims of injury. We shall, *arguendo,* resolve that issue against the plaintiff and therefore hold that the plaintiff relies on specific charges of negligence.[4]

■      We conclude that a fair reading of the instructions reveals that the trial court limited the jury's consideration of the rule of res ipsa loquitur to the four specific allegations of negligence submitted to the jury and forbade consideration of any general charge of negligence.

### NEED FOR EXPERT OPINION TESTIMONY

We now consider the defendant's contention that the plaintiff was not entitled to the benefit of the rule of res ipsa loquitur for want of opinion evidence by an expert that the defendant's conduct fell below the standard of care for delivery of gasoline. The defendant argues that the testimony of an expert was necessary because "only with such testimony can a juror conclude that a reasonable delivery person would have anticipated that a diesel truck so positioned would be affected by vapors leading to a fire." The defendant cites for this argument *Hall v. State,* 290 Or 219, 619 P2d 256 (1980); *Lynd v. Rockwell Manufacturing,* 276 Or 341, 554 P2d 1000; and *Getchell v. Mansfield,* 260 Or 174, 489 P2d 953 (1971).

In *Hall v. State, supra,* the defendant had contended

---

[3] *Followed* in *Waterway Terminals v. P.S. Lord,* 256 Or 361, 371, 474 P2d 309 (1970).

[4] It is arguable that two of the four charges of negligence submitted to the jury are only charges of general negligence.

on appeal that "expert testimony"[5] was necessary for the plaintiff to establish what would be a reasonable time for the removal of sand from a highway and on review had contended that expert opinion was required to prove that the sand should have been removed earlier than the plaintiff's accident. We said that the rule was otherwise:

> "Expert testimony is an indispensable part of plaintiff's case only when the average juror cannot be expected to understand the issues without that kind of assistance. It is not required simply because the circumstances are outside the average juror's experience if the other evidence is such as to present the issue in terms which the jury can be expected to understand. *Lynd v. Rockwell Manufacturing,* 276 Or 341, 349, 554 P2d 1000 (1976); *Simpson v. Sisters of Charity of Providence,* 284 Or 547, 557, 588 P2d 4 (1978)."

290 Or at 27. We held that expert testimony was not essential to the plaintiff's case.

In *Lynd v. Rockwell Manufacturing, supra,* a product liability design defect case concerning a saw, the defendant contended that an expert's opinion would be necessary to establish that the design was defective. The opinion states:

> "Admittedly, design defect cases sometimes involve technical, scientific issues which cannot be fully understood by the average juror without some expert assistance. In such cases, expert testimony as to the defective nature of defendant's design will be an indispensable element of plaintiff's case. However, when the issues presented relate to matters which require only common knowledge and experience to understand them, the testimony of experts is not essential. *See generally* VII Wigmore 453, § 2090 (3d ed 1940) and cases cited therein. This is the same rule which is applied in other cases which frequently involve technical, scientific issues such as medical malpractice cases. *See, e.g., Getchell v. Mansfield,* 260 Or 174, 489 P2d 953 (1971); *Nation v. Gueffroy,* 172 Or 673, 142 P2d 688, 144 P2d 296 (1943); Annot., 40 ALR3d 515 (1971); Annot., 81 ALR2d 597 (1962)."

276 Or at 341. The opinion held that from the evidence as to the working of the saw and its components the jury could

---

[5] "Expert testimony" is often used by courts and lawyers as a short expression for opinion evidence given by a witness who has qualified as an expert in the particular field of inquiry involved in the litigation. *See* OEC 702.

understand the issue without the opinion evidence of an expert.

In *Getchell v. Mansfield, supra,* a medical malpractice case, the plaintiff had suffered injuries when wires used in surgery to join separated parts of her shoulder had broken. The plaintiff alleged negligence in failing to advise her of the risk of breakage and that therefore she did not give informed consent. The opinion held that the jurors could not comprehend the issue without help from experts and therefore expert opinion evidence that the defendants' conduct fell below the standard of care in the community was necessary. We have no reason to question that decision, but we do not perceive it as helping this defendant.[6]

■      Just as in *Hall v. State, supra,* and *Lynd v. Rockwell*

---

[6] Dean Prosser discussed various kinds of medical malpractice in an article he wrote about res ipsa loquitur:

"This question of duty has arisen frequently in malpractice cases. The obligation of a physician, surgeon or dentist is merely one of minimum skill common to the profession and reasonable care in using it; he does not undertake to cure. Consequently the mere fact that his treatment has been unsuccessful, or that something has gone wrong with it, permits no inference of his negligence. There is not enough in a mistaken diagnosis alone, or the unfortunate choice of a wrong method of treatment, or the kind of accident that occurs in a substantial percentage of similar cases in spite of all reasonable precautions, to show the necessary lack of either skill or care. What this means is that in the ordinary malpractice case laymen are not qualified to say that a good doctor would not go wrong, and that it is only where there is expert testimony that proper skill and care would have done better that the conclusion is open.

"In a large number of cases the California courts have held that in the absence of such expert evidence negligence cannot be found. These decisions, together with the notorious unwillingness of the medical profession ever to testify against one another, may impose an insuperable handicap upon the plaintiff in cases where there has been real butchery but he lacks the proof. As medical science approaches a greater degree of perfection and common knowledge of its principles and methods increases, it seems reasonable to expect that the rule will be limited to fewer situations.

"Even today, however, there are some medical and surgical errors on which any layman is competent to pass judgment, and common experience tells all of us that such things do not happen unless there is incompetence or want of care. To these cases res ipsa loquitur may apply. When a dentist drops a tooth down a patient's windpipe or it is knocked out in the course of a tonsillectomy, when instruments are not sterilized, when a ligament is torn during treatment or an operation leaves sponges in the victim's interior or removes an inappropriate part of his anatomy, or when there are serious burns from hot water bottles, chemicals, or infra-red or X-rays during either diagnosis or treatment, the thing speaks for itself without the aid of any expert's voice." (Footnotes omitted.)

Prosser, *Res Ipsa Loquitur in California,* 37 Cal L Rev 183, 210-212 (1949).

*Manufacturing, supra,* we find that there was evidence from which the jury in the case at bar could understand the issues of negligence and causation without the assistance of opinion evidence. We agree with the statement by the Court of Appeals:

> "The average juror does not need an expert to explain that it is more likely than not negligence to overfill an underground tank and cause gasoline to spill on the surface. A juror can understand, without expert testimony, that a reasonably prudent person would not park a delivery truck with the engine running where it is reasonably foreseeable that gasoline vapors will be present and that the truck would be affected by, or ignite, those vapors."

70 Or App at 5.

## BASIS IN THE EVIDENCE TO INSTRUCT ON RES IPSA LOQUITUR

For decision of this case we have one final inquiry whether an instruction on res ipsa loquitur was appropriate in light of the evidence that was adduced. It should be kept in mind that the defendant's driver was the only eyewitness to the historical facts, i.e., what transpired. From the driver's account, which was direct evidence, the jury is entitled to draw inferences based on any of the logical inductive or deductive processes by which the brain arrives at reasoned conclusions from given data.

There was sharp dispute about the cause of the gasoline vapors reaching the truck's engine and producing the racing that, in turn, resulted in acceleration of the pumping process. The defendant charged the plaintiff with negligence in having a vent pipe that was shorter than allowed by code and having a cap that deflected vapors downward where east wind trapped them against the building so as to reach the truck's engine. The jury could have rejected the driver's testimony that the east wind was blowing so as to trap the vapors in that manner. The driver did not notice gasoline spewing from the fill pipe until after the engine began to race, but because the driver did not know when the tank would be full with normal pumping, it could be found that the gasoline began to spill from the fill pipe by overfill and produced the vapors. Such a finding would be supported by the fact that gasoline came out of the fill pipe and that the pipe was still filled to within eight inches of the top even after the fire.

■ The doctrine of res ipsa loquitur may be invoked to establish both negligence and causation.

> "In many cases the inference to be drawn is a double one, that the accident was caused in a particular manner, and that the defendant's conduct with reference to that cause was negligent. The inference of negligence may arise either where a definite cause is known, or where the accident is more or less a mystery, with no particular cause indicated. When a gasoline filling station mysteriously explodes, many possible explanations can be suggested, but the most likely one may be negligence on the part of those in charge. The plaintiff is not required to eliminate with certainty all other possible causes or inferences, which would mean that the plaintiff must prove a civil case beyond a reasonable doubt. All that is needed is evidence from which reasonable persons can say that on the whole it is more likely that there was negligence associated with the cause of the event than that there was not." (Footnotes omitted.)

Prosser & Keeton, Torts 247-48, § 39 (5th ed 1984). That the inferences permissible under the doctrine go to causation as well as negligence was recognized in *DeWitt v. Rissman,* 218 Or 549, 559, 346 P2d 104 (1959), where it is stated:

> "Thus, a party who depends upon the doctrine of res ipsa loquitur must establish facts from which the good sense of the jury can draw a conclusion that the alleged wrongdoer was negligent and in that manner caused the injury."

■ We believe that the key question to be asked by a court is that which we recently approved:

> "Could it have been reasonably found by the jury that the accident which occurred in this case is of a kind which more probably than not would not have occurred in the absence of negligence on the part of the defendant?"

*Watzig v. Tobin, supra,* 292 Or at 649. Asking that question about the evidence in this case leads us to conclude, as did the trial court and the Court of Appeals, that the plaintiff was entitled to the benefit of the doctrine of res ipsa loquitur and that in instructing the jury the trial court did not err in any respect covered by the defendant's objections before the charge or exceptions after the charge.

### *PROPRIETY OF SUBMITTING THE DOCTRINE BY JURY INSTRUCTION*

After oral argument in this case, we addressed questions to counsel for the respective parties and asked that they submit supplemental briefs. One of the questions we addressed to counsel was whether the inference permitted by res ipsa loquitur should be the subject of a separate instruction. This question was prompted by our attention to the function that the doctrine serves as discussed in *Watzig v. Tobin, supra,* where we pointed out that res ipsa loquitur is merely a rule of circumstantial evidence. We drew the attention of counsel to *Powell v. Moore,* 228 Or 255, 269, 364 P2d 1094 (1961), in which this court held that it is permissible to instruct the jury on res ipsa loquitur. We there said:

> "Defendant reminds us that in *Ritchie v. Thomas et al.,* 190 Or 95, 113, 224 P2d 543 (1950), a question was raised as to whether it is ever permissible to instruct the jury on res ipsa loquitur. In that case it was said:
>
> > " '* * * Since the effect of the rule is merely to take the plaintiff's case to the jury, we see no more reason for requiring the court to comment on this type of circumstantial evidence than upon any other type. Whether it would be reversible error for a trial court to instruct on the inference which arises in this type of case is a matter which need not now be decided.'
>
> "We believe that it is proper for the court to instruct the jury with respect to the permissibility of drawing the inference of defendant's negligence from the facts of the occurrence in appropriate cases. It is true, as the quotation from the Ritchie case indicates, that res ipsa loquitur is simply a rule relating to a particular kind of circumstantial evidence. However, res ipsa permits the drawing of an inference which rests upon no specific causative circumstance in the case; and it is quite possible that without an instruction the jury would not realize that it is permissible to draw the inference of defendant's negligence from the fact that in common experience the accident in question would not ordinarily occur in the absence of negligence on the part of the defendant. '[T]he jury cannot pass intelligently upon the question whether the inference of negligence should be drawn, unless, in language which it can understand, it receives an explanation of why the evidence would permit an inference of negligence, and why the jury may reject such inference if it sees fit.' *Foltis, Inc. v. City of New*

*York,* 287 NY 108, 124, 38 NE2d 455, 464, 153 ALR 1122 (1951)."

228 Or at 269-70.

We have not uniformly held that rules of circumstantial evidence are proper subjects of jury instructions. In *State v. McCormick,* 280 Or 417, 571 P2d 499 (1977), in dealing with a permissible inference of consciousness of guilt arising from flight from the scene of a crime, we stated that the inference should not ordinarily be the subject of instruction; rather, the significance of flight is better addressed in argument to the jury.

Should there be a different rule with respect to the permissible inference where res ipsa loquitur is applicable? Our sister state of Washington is apparently convinced that there should not.

"Res ipsa is properly treated the same as other circumstantial evidence in instructions to the jury. The remaining question is whether, instead of or in addition to these instructions, the so-called 'res ipsa instruction' should be given. We are of the opinion that such instructions should not be given. To do so is to emphasize one particular inference over others which may be, and usually are, in the case. When added to other, general instructions which inform the jury of what they may or should do with the evidence before them, such particularized instructions are unnecessary and redundant. We agree with the statement that 'in keeping with the modern thinking on the subject, giving slanted or formula instructions should be avoided wherever possible. They should be given only where a general instruction would clearly be inadequate or would confuse or mislead the jury.' * * *

" 'Proposed instructions advising the jury that it may or should consider certain specific evidence in arriving at certain conclusions or findings or in arriving at a verdict should ordinarily be rejected. They are often proposed in negligence cases where one party wish [sic] to call attention to certain facts in evidence as indicative of distance or speed. While such instructions may be legally correct and, if worded properly, may not technically be a comment on the evidence, they approach 'comment' since they intimate to the jury that the judge thinks that particular evidence commands special attention or has more weight than the other evidence. They tend to 'highlight' or 'pinpoint' certain evidence to the detriment of other

evidence in the case. In that way they do constitute 'comment.' Such instructions are ordinarily needless since the jury will consider all evidence not stricken by the court, and it is the attorneys' function to (and they undoubtedly will) call attention to such evidence in their argument. The only time they should be given is when some other instruction or some special quirk in the case may lead the jury to believe that it should ignore such evidence, even though not specifically told to do so.' "

*Zukowsky v. Brown,* 79 Wash 2d 586, 488 P2d 269, 279 (1971). *See also Mobil Chemical Company v. Bell,* 517 SW2d 245, 252-53 (Tex 1974), for a similar discussion and holding.

On the other hand, as recently as 1971 this court addressed this question with respect to res ipsa loquitur in *Dacus v. Miller,* 257 Or 337, 341, 479 P2d 229 (1971). Footnote 4, 257 Or at 341-42, says:

"In a line of cases beginning in 1950 we took the position that the trial court is not required to instruct on res ipsa, Ritchie v. Thomas et al, 190 Or 95, 224 P2d 543 (1950), but that such an instruction may be given, Powell v. Moore, 228 Or 255, 364 P2d 1094 (1961), and that it is 'preferable' to instruct on the doctrine in a case in which it applies. Centennial Mills, Inc. v. Benson, 234 Or 512, 383 P2d 103 (1963). Without citing these cases, however, we said in Waterway Terminals v. P.S. Lord, 242 Or 1, 53, 406 P2d 556, 13 ALR3d 1 (1965), that in a res ipsa case an instruction on the doctrine should be given if requested.

"It appears that the position taken in the *Waterway Terminals* case is in accord with the modern decisions in other states. See, e.g., Ryan v. George L. Lilley Co., 121 Conn 26, 183 A 2 (1936); Merriman v. Kraft, 242 NE2d 526 (Ind App 1968) (dictum); Vespe v. DiMarco, 43 NJ 430, 204 A2d 874 (1964); Tuso v. Markey, 61 NM 77, 294 P2d 1102 (1956); George Foltis, Inc. v. City of New York, 287 NY 108, 38 NE2d 455 (1941); Fink v. New York Cent. R. Co., 144 Ohio St 1, 56 NE2d 456 (1944); Turk v. H.C. Prange Co., 18 Wisc 2d 547, 119 NW2d 365 (1963); North Central Gas Company v. Bloem, 376 P2d 382 (Wyo 1962) (dictum). *Contra,* Chase v. Beard, 55 Wash 2d 58, 346 P2d 315 (1959)."

We have come to the conclusion that in the case at bar we should not attempt a final answer to the question of the propriety of ever instructing on res ipsa loquitur, for the issue

was not presented in the trial court or on appeal. Anything we might say would be only dictum.

The decision of the Court of Appeals is affirmed.