Argued and submitted February 13, reversed and remanded September 25, 1991

## Robert PETERS
### and Genevieve Peters,
*Appellants,*

*v.*

## CITY OF MEDFORD,
*Respondent.*

## (89-1306-L-3; CA A64103)

818 P2d 517

Robert H. Grant, Medford, argued the cause and filed the briefs for appellants.

Lisa E. Lear, Portland, argued the cause for respondent. With her on the brief were I. Franklin Hunsaker, Ronald E. Bailey, and Bullivant, Houser, Bailey, Pendegrass & Hoffman, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

## EDMONDS, J.

Plaintiffs brought this negligence action for property damage caused by a flow of sewage into their home. They appeal a judgment on a jury verdict for defendant. We reverse.

Plaintiffs' home is served by defendant's sewer system. Defendant's sanitation department received a call about a plugged sewer line at a nearby country club. It unplugged the line with a high-pressure water hose. Within an hour, sewage began pouring out of plaintiffs' toilets, shower drains and sinks. The sewage continued to flow until defendant removed a blockage from the sewer line just past plaintiffs' home. By that time, there were approximately two inches of sewage in the home. The cost of clean up and repairs amounted to over $19,000.

Plaintiffs made several specific allegations of negligence against defendant. Two were submitted to the jury:

"2) It failed to properly clean obstructions from [the] sewer line;

"3) It improperly attempted to remove an obstruction in the sewer line by means of a high pressure hose causing a surge to go through the line and into the plaintiffs' home[.]"

They also alleged:

"4) The unplugging operation being engaged in by [defendant's] crew in the sewer lines, was an operation under the exclusive control of the defendant and its employees;

"That the overflow of sewage into the plaintiffs' home as a result of unstopping the clogged sewer would not have happened in the absence of negligence on the part of the employees of [defendant]."

At the conclusion of the evidence, the court struck allegation 4 from the complaint, because "it just states a legal conclusion. It doesn't allege facts." The court instructed the jury:

"I did withdraw from your consideration certain claims made by the plaintiff. Those claims are out of the case for all purposes, and you should not concern yourself with why the court has withdrawn them.

"* * * * *

"Your verdict in this case should be based only upon these instructions and the evidence which you did hear."

The instructions defined "evidence" as "the testimony, oral testimony, the exhibits and any legal presumptions where they do apply." However, the court declined to give an instruction on *res ipsa loquitur,* even though it concluded that the doctrine applied in the circumstances.[1] The court informed counsel that it believed it sufficient if they were to argue the doctrine to the jury.

■     In *McKee Electric Co. v. Carson Oil Co.,* 301 Or 339, 348, 723 P2d 288 (1986),[2] the court said, concerning *res ipsa loquitur*:

"A plaintiff need only plead ultimate facts that, if true, show that an injury occurred in circumstances that more probably than not would not have occurred in the absence of negligence on the part of the defendant."

We hold that allegation 4 suffices to allege a theory based on *res ipsa loquitur* when read with the other allegations in the complaint. Accordingly, the court erred when it struck the

---

[1] Plaintiffs requested that the court give UCJI No. 22.00:

"The law assumes that all persons have obeyed the law and have been free from fault. Accordingly, the fact that there was a [describe incident] or that a person was injured or damaged is no indication that anyone was at fault.

"However, you may find that the defendant was at fault if you find all of the following four elements are proven.

"(1) Injury or damage was caused by the [instrumentality];

"(2) At the time of the incident the [instrumentality] was under the defendant's exclusive control or management;

"(3) The incident was not caused by plaintiff's voluntary action or contribution; and

"(4) In the normal course of events, the incident would not have occurred unless the defendant was at fault." (Brackets in original.)

UCJI No. 22.00 has since been amended to read:

"The law assumes that all persons have obeyed the law and have been free from fault. Accordingly, the fact that there was a [describe incident] or that a person was injured or damaged is no indication that anyone was at fault.

"However, you may find that the defendant was at fault if you find that the incident that caused damage to the plaintiff is one that, in the normal course of events, would not have occurred unless this defendant was at fault." (Brackets in original.)

[2] In *McKee,* the court discussed the propriety of giving a *res ipsa loquitur* instruction to the jury. After reviewing arguments and case authorities *pro* and *con,* it declined to decide the question. 301 Or at 356.

allegation. However, because it allowed the parties to argue *res ipsa loquitur* to the jury, the question remains whether the error was prejudicial.

■ ■ Plaintiffs argue that the trial court erred in not instructing on *res ipsa loquitur* for the same reason that it erred in striking allegation 4. They rely on *Powell v. Moore,* 228 Or 255, 269, 364 P2d 1094 (1961), in which the court said:

> "[I]n *Ritchie v. Thomas et al.,* 190 Or 95, 113, 224 P2d 543 (1950), a question was raised as to whether it is ever permissible to instruct the jury on res ipsa loquitur. In that case it was said:
>
> " '* * * Since the effect of the rule is merely to take the plaintiff's case to the jury, we see no more reason for requiring the court to comment on this type of circumstantial evidence than upon any other type. Whether it would be reversible error for a trial court to instruct on the inference which arises in this type of case is a matter which need not now be decided.'
>
> "We believe that it is proper for the court to instruct the jury with respect to the permissibility of drawing the inference of defendant's negligence from the facts of the occurrence in appropriate cases. It is true, as the quotation from the Ritchie case indicates, that res ipsa loquitur is simply a rule relating to a particular kind of circumstantial evidence. However, res ipsa permits the drawing of an inference which rests upon no specific causative circumstance in the case; and it is quite possible that without an instruction the jury would not realize that it is permissible to draw the inference of defendant's negligence from the fact that in common experience the accident in question would not ordinarily occur in the absence of negligence on the part of the defendant. '[T]he jury cannot pass intelligently upon the question whether the inference of negligence should be drawn, unless, in language which it can understand, it receives an explanation of why the evidence would permit an inference of negligence, and why the jury may reject such inference if it sees fit.' *Foltis, Inc. v. City of New York,* 287 NY 108, 124, 38 NE2d 455, 464, 153 ALR 1122 (1951)."

Defendant argues that the evidence does not support a *res ipsa loquitur* instruction and that, even if it does, it was not error to refuse to instruct on it, because to do so would have

put undue emphasis on circumstantial evidence and the inferences that can arise therefrom.

A *res ipsa loquitur* instruction is supported by evidence if a jury could reasonably find that the event was of a kind that does not occur in the absence of negligence and that it is more probable than not that the negligence of the defendant, and not of a third party, caused the injury of which the plaintiffs complain. *Watzig v. Tobin,* 292 Or 645, 650, 642 P2d 651 (1982). There was evidence that the flow of sewage into plaintiffs' home occurred shortly after defendant completed its work on the country club sewer line and while the line was under defendant's control. Blanton, a civil engineer, hypothesized that the sewer line must have had two obstructions: the one that defendant first removed and one closer to the club. In his opinion, after the first obstruction was removed and the pressure in the sewer line was released, a second obstruction and an estimated 1400 gallon head of water behind the obstruction began to move down the line. He believed that the second obstruction stopped and plugged the line just past plaintiffs' home and that the head of water caused sewage to back up into their home.

Blanton also testified that the damage to plaintiffs' home was not something that would have happened if the proper standard of care had been followed. He noted that defendant left the scene a couple minutes after the first obstruction was removed. He believed that, if defendant had waited a few minutes longer, it would have realized that the problem at the country club had not been remedied. Defendant then could have cleared the second obstruction and avoided the sequence of events that led to the flooding of plaintiffs' home.

There is no cogent evidence that plaintiffs or any third party caused plaintiffs' damage.[3] *See Jordan v. City of*

---

[3] The dissent correctly articulates the law of *res ipsa loquitur* when it says that plaintiffs need not eliminate all other possible causes of damages, but need only "show that it is reasonable to infer that the accident would not have happened had * * * defendant not been negligent." 109 Or App 35. Nonetheless, it would conclude that, "[b]ecause numerous users had access to the sewer, defendant did not have exclusive control of the instrumentality." 109 Or App 35. Therefore, according to the dissent, plaintiffs were not entitled to *res ipsa loquitur.* That conclusion is not supported by the facts. Three witnesses employed by *defendant* gave testimony from which a reasonable inference could be drawn that no other user's activity caused

*Hillsboro,* 48 Or App 839, 617 P2d 970 (1980), *rev den* 290 Or 449 (1981); *Cummins v. City of West Linn,* 21 Or App 643, 536 P2d 455 (1975). On cross-examination, one of defendant's employees testified:

> "Q   Did what you saw [at a manhole near plaintiff's home] compare to what you saw when the release occurred up at the Country Club? Did anything additional wash past you at the [next] manhole?

> "A   Well, I saw what I thought was either plastic or a diaper or something white and hair roots and stuff that's in a lot of lines, you know, *nothing that was unusual,* whether it would have been the white plastic or whatever it was going by." (Emphasis supplied.)

The day after the incident, another employee cleaned the sewer line down the street from plaintiffs' home and found "[n]othing, just real light debris, if anything." That testimony was corroborated by an interoffice memorandum from the Public Works Supervisor, which said:

> "The Black Oak Line [near plaintiffs' home] was ran [sic] December 6th [the day after the incident], and only a minimal amount of roots were [sic] found. No significant blockage."

Under the circumstances, the evidence supported a *res ipsa loquitur* instruction.

■      Because plaintiffs were entitled to have the jury consider *res ipsa loquitur,* as well as their specific allegations of negligence, the issue remains whether it was error for the trial court not to have instructed on it. It was relevant both on the issues of negligence and causation. It would allow the jury to draw an inference of negligence from the facts of the occurrence and from common experience that an incident of the nature alleged does not ordinarily occur in the absence of negligence. We hold that the court's error in striking the allegation was prejudicial in the light of the combined effect of the withdrawal of allegation 4, the giving of an instruction that told the jury that the fact that damage occurred is not

---

plaintiffs' damage. Moreover, the damage occurred immediately after defendant unplugged the line with a high-pressure water hose.

evidence of negligence,[4] the failure to give an instruction on *res ipsa loquitur* and the giving of an instruction that confined its deliberations to the instructions and the evidence.

Reversed and remanded.

**WARREN, P. J.,** dissenting.

Because plaintiffs were not entitled to rely on *res ipsa loquitur,* the court's refusal to instruct the jury was not an error. Further, I am not convinced that, when *res ipsa loquitur* does apply, the court should *ever* give a jury instruction on the inference of negligence. Accordingly, I dissent.

*Res ipsa loquitur* is a rule of circumstantial evidence that allows an inference of negligence to be drawn if the accident is of a kind which ordinarily would not have occurred in the absence of the defendant's negligence, even though it might be impossible to determine the specific way in which the defendant was negligent. *Watzig v. Tobin,* 292 Or 645, 642 P2d 651 (1982); *Kaufman v. Fisher,* 230 Or 626, 371 P2d 948 (1962). Before *res ipsa loquitur* can apply, the plaintiff must show that the defendant had exclusive control of the instrumentality. That does not mean that the defendant must be in exclusive physical possession. Instead, it must be clear that the defendant's negligent actions are in all probability the cause of the plaintiff's injury. *Pattle v. Wildish Construction Co.,* 270 Or 792, 797, 529 P2d 924 (1974). *Res ipsa loquitur* does not apply in this case, because defendant did not have exclusive control over the instrumentality. Sewers become plugged and back up even when municipalities are exercising reasonable care.

This case is controlled by *Jordan v. Hillsboro,* 48 Or App 839, 617 P2d 970 (1980), and *Hamilton v. State,* 42 Or App 821, 601 P2d 882 (1979). In both, we held that the plaintiffs were not entitled to argue *res ipsa loquitur,* because the defendants did not have exclusive control over the sewer system, which was the instrumentality.[1] In *Jordan,* the

---

[4] The trial court gave this instruction:

"The law assumes that all persons have obeyed the law and have been free from negligence. Accordingly, the mere fact that an accident occurred or that a party sustained injury or damage is no indication of negligence on the part of anyone."

[1] The majority incorrectly identifies the sewage as the "instrumentality,"

plaintiff's home was damaged when a sewer backed up due to large amounts of muddy water in the system. Several pipes were damaged at the site of a new housing development, and run off had entered the system through the broken lines. Similarly, in *Hamilton,* unknown third parties had placed large rocks inside a maintenance hole, causing it to overflow and damage the plaintiff's home.

The majority places undue emphasis on the fact the sources of the obstructions in *Jordan* and *Hamilton* were suspected negligent or wilful conduct by third parties. In my view, the holdings do not turn on the fact that there was strong evidence of interference by third parties. The evidence of third party contribution only bolstered the critical fact that the defendants did not have exclusive control because of the *potential* for access by third parties.

Other jurisdictions, when faced with cases on similar facts, have also held that *res ipsa loquitur* does not apply. For example, in *Reich v. Salt Lake City Suburban Sanitary Dist. No. 1,* 29 Utah 2d 125, 506 P2d 53 (1973), a main sewer line became plugged, forcing raw sewage up through the drains and toilets of the plaintiffs' homes. There was no evidence as to what caused the obstruction or the resulting flooding. Nevertheless, the Utah Supreme Court held that the plaintiffs could not argue *res ipsa loquitur,* because the defendant did not have exclusive control over the system. That particular system was connected to 270 homes as well as over to 100 unlocked maintenance holes:

> "Rags, garbage, bones, sanitary napkins, diapers, and any number of other items could pass through laterals of a diameter of four inches. If these items flocculate together and a blockage occurs, it cannot be held that the defendant is liable under the rule of *res ipsa loquitur.*" 29 Utah 2d at 127.

---

because it caused the actual damage to plaintiffs' home, relying on *Cummins v. City of West Linn,* 21 Or App 643, 563 P2d 455 (1975). I believe that that aspect of *Cummins* has been impliedly overruled by *Jordan* and *Hamilton.* Those cases, as well as every other case cited in this dissent, identify the sewer system itself as the instrumentality for the purpose of *res ipsa loquitur* analysis. It simply does not make any sense to consider sewage as the instrumentality; it is not designed, created or controlled by the municipality. When an accident occurs due to a 'municipality's negligence, the fault lies in improper design, construction or maintenance of the pipe system — not in the content of the sewage. There is no liability when a municipality is not negligent in constructing or maintaining a system, but a plug occurs due to some unusual content in the sewage.

*See also City of New Smyrna Beach v. McWhorter,* 418 So 2d
261 (Fla 1982); *Arey v. Board of Light & Water Com'n,* 50 NC
App 505, 274 SE 2d 268, *rev den* 302 NC 629 (1981); *Shipley
v. City of Spearfish,* 89 SD 559, 235 NW 2d 911 (1975); *Freitag
v. City of Montello,* 36 Wis 2d 409, 153 NW 2d 505 (1967).

I am not disputing that *res ipsa loquitur* requires
only that the accident "speak" of the defendant's negligence;
it need not "scream" it. *See Kaufman v. Fisher, supra.*
Neither must a plaintiff eliminate with certainty all other
possible causes of the injury, other than the defendant's
negligence. Nevertheless, a plaintiff must be able to show that
it is reasonable to infer that the accident would not have
happened had the defendant not been negligent. Because
numerous users had access to the sewer in this case, defen-
dant did not have exclusive control of the instrumentality. It
follows that plaintiff could not demonstrate a strong proba-
bility that it was the conduct of defendant, rather than
someone else, that caused the injury. *Jivelekas v. City of
Worland,* 546 P2d 419 (Wyo 1976);[2] *see also Ward v. City of
Charlotte,* 48 NC App 463, 269 SE 2d 663, *rev den* 301 NC 531
(1980); *Village of Willoughby v. Malone,* 171 NE 402 (Ohio
1930).

Because *res ipsa loquitur* does not apply, the trial
court did not err in striking allegation 4 from plaintiffs'
complaint. It merely contained background allegations for
the *res ipsa loquitur* claim. The specific allegation of negli-
gence—that defendant's employees negligently unstopped a
clogged sewer—was sufficiently covered in allegation three.

In my view, we need not decide whether a jury
instruction should ever be given when *res ipsa loquitur* does
apply. Although *Richie v. Thomas,* 190 Or 95, 113, 224 P2d
543 (1950), unequivocally holds that a jury instruction is

---

[2] *Jivelekas* involved a plugged sewer line that caused sewage to back up into the
plaintiffs' homes. There was testimony that there was no way to prevent a sewer
from becoming obstructed by foreign objects. An expert testified for the defendant
city:

"Q. What has your experience or familiarity shown you?

"A. All sorts of things are found in the sewer lines. The Denver system has their
    meat packing areas and have had cows [sic] heads, steers [sic] heads, coming
    down the sewer lines, tremendous limbs. How they get down in the sewer
    line I have no idea. All sorts of materials show up in sewer lines, yes, sir."
    546 P2d at 422.

appropriate, recent cases have cast doubt on that holding. For example, in *McKee Electric Co. v. Carson Oil Co.,* 301 Or 339, 723 P2d 288 (1986), the Supreme Court declined to decide whether a *res ipsa loquitur* instruction should ever be given. 301 Or at 356. *Res ipsa loquitur* is merely a rule of circumstantial evidence that permits a rational evidentiary conclusion to be drawn from proven facts. The Supreme Court has held that rules of circumstantial evidence are not proper subjects for jury instructions, largely because an instruction on an inference is tantamount to a comment on the evidence. *See, e.g., State v. McCormick,* 280 Or 417, 571 P2d 499 (1977).

I dissent.